WEST BROS., INC. *v.* H & L DELIVERY SERVICE, INC.

March 8, 1954

No. 39106          56 Adv. S. 48          70 So. 2d 870

*Dudley W. Conner,* Hattiesburg, for appellant.

*Wingo & Finch,* Hattiesburg, for appellee.

ETHRIDGE, J.

West Brothers, Inc., appellant, filed an application with the Public Service Commission of Mississippi seeking a certificate of public convenience and necessity to permit certain operations as a common carrier of property by motor vehicles in intrastate commerce. The application sought to conform appellant's intrastate authority in Mississippi with its present interstate authority in this State. Several common carriers appeared at the hearing as protestants, but after some amendments in the application, only appellee H and L Delivery Service, Inc. protested the proposed certificate.

W. N. Innis of Hattiesburg is traffic manager of West Brothers. He testified in substance as follows: Appellant operates both in intrastate and interstate commerce, the latter operations being under a certificate from the Interstate Commerce Commission. West Brothers is seeking authority to operate in intrastate commerce only to those points in South Mississippi which it presently serves daily in interstate commerce. For example, appellant serves daily in interstate commerce the Towns of Raleigh and Bay Springs, where the traffic moves through Jackson, but although it is daily serving those towns on interstate shipments, it cannot now serve them on intrastate shipments. If appellant now receives an intrastate shipment from Jackson destined for Bay Springs, it must now handle that shipment by taking it to its Laurel terminal and notifying the Bay Springs customers to come and get it. Yet appellant daily serves these two towns on interstate shipments. A similar situation exists with reference to the other Mississippi towns and cities on appellant's present interstate authority where it now has no intrastate authority. Innis said there are no common carriers at Laurel with whom appellant could interchange such shipments, and that appellee has no terminal at Laurel, although it would be possible to interchange with appellee at Hattiesburg on shipments destined for Raleigh and Bay Springs. Appellant has daily service to all points on its routes, and has a large volume of modern operating equipment. Its headquarters are in Hattiesburg with a 24-hour dispatcher's office operated there. It has terminals at Biloxi, Gulfport, Jackson, Laurel, McComb, Hattiesburg and Meridian, and also at Mobile, Alabama and New Orleans, Louisiana. Appellant has a leased wire and teletype service connecting practically all of these terminals, and is in good financial condition.

Innis testified that appellant has local trucks operating out of Hattiesburg in all directions daily, and that appellant is in need of additional business to go along

with interstate traffic which it delivers under its interstate authority. There is a certain amount of discrimination against Mississippi merchants, because appellant can give better service in interstate business than it can on intrastate business. Appellant furnishes overnight service from New Orleans and Mobile to its intrastate destinations in Mississippi. Mississippi merchants on appellant's interstate routes can get a second morning delivery of traffic as far away as St. Louis, Memphis, Birmingham and Atlanta, which, under the present limited intrastate certificate of appellant, is the same service which Mississippi merchants can get on shipments from Jackson and other Mississippi points. Moreover, the necessity of interchanging intrastate traffic makes the service more irregular. Appellant has eight full-time solicitors of traffic to make daily and other periodic reports and traffic surveys. Innis said that on the routes for which appellant is seeking to conform its intrastate authority to its interstate certificate, there is a need for the service applied for by appellant. He testified that appellant's operations are presently short-haul, local deliveries to the smaller towns and communities, a majority of which do not have railroad service; that appellant is not receiving any competition to the points applied for; that the present necessity to interchange shipments to these local points has made it imperative to supply all of appellant's motor terminals, agents and pick-up and deliverymen with two separate lists of points, one of the lists comprising the Mississippi points where appellant has intrastate authority, and the other list being interstate; and that this diversity has caused considerable confusion. If the application were granted, appellant would be in a position to give customers in Mississippi the same type of daily service on intrastate shipments that appellant is now giving them on interstate shipments. In addition, it would eliminate the confusion of shippers, receivers and appellant.

From personal contact with shippers and receivers of freight, Innis was of the opinion that there was a need for further and regular service at the points in question. Appellee is not rendering that service at the present time. Innis said that appellee was rendering service to those points only when there was enough traffic to warrant a shipment. Appellant interchanges with appellee at Hattiesburg, but Innis stated that appellee told them that it would operate to Bay Springs and Raleigh only if it had as much as 10,000 pounds. Complaints has been made by shippers and receivers concerning appellee's service. Because appellee only operated upon call and where there was an adequate amount of freight, Innis thought that appellee was not handling the traffic over the routes applied for by appellant, and was not giving the type of service, every day, which appellant was in a position to give with its trucks now operating in interstate commerce over these same routes. Appellee had at one time terminals in Jackson, Meridian and Vicksburg, but has closed up those terminals. Appellant is seeking the requested certificate because the territory is not now being served by anyone else on a daily basis six days a week. Appellant goes to each of the points on its routes daily irrespective of the size of the load on its trucks. Appellee is not furnishing daily service to the points in question, but serves the points only when there is sufficient tonnage to warrant in appellee's opinion trucking service.

Innis said that he did not consider that a regular daily operation such as appellant rendered was competitive with an irregular operator like appellee, which operates only on call and demand, whereas appellant operates daily between fixed terminii irrespective of the size of the load; that a carrier such as appellee makes a habit of accumulating traffic for two or three days or more which would be enough to warrant a truck in making the route; that appellant has offered appellee

traffic of 5,000 or 6,000 pounds, and was told by appellee that it would take it in a couple of days when appellee had more traffic to go to the point in question. Innis said that the two types of carriers are different because of these substantial differences in the nature of their service.

T. L. Sumrall, secretary of the Public Service Commission, testified concerning several complaints the Commission had received within the past two years concerning appellee's service on certain deliveries and concerning appellee's failure to pay off claims for C.O.D. shipments.

H. E. West, president and general manager of appellant, testified as to appellant's undisputed, sound financial situation and its ability to render the service sought by the present application. He said that the average capacity of its trailers is around 30,000 pounds, but that in most cases appellant under its present certificate was handling considerably less than that on each shipment; that it would be sound and economic to authorize appellant to serve the intrastate points for that reason alone; that appellant serves every store and point on its authorized route six days a week; that appellant has had a number of complaints because it cannot serve intrastate points on its interstate routes. In response to a question as to whether the authority sought would take some of the freight normally handled by appellee, West said that he did not think that appellant would take freight normally handled by appellee, that the freight appellant expected to be able to secure in volume would move out of Jackson, Meridian and Laurel and appellee did not operate regular routes up there, from any terminals in those cities. Appellant is not seeking to enlarge the scope of its operations beyond the points presently served in interstate commerce. West said that the proposed certificate would enable appellant to haul more adequately a full load on its daily shipments, that a lot of individuals are finding it necessary

to use their own trucks and to haul for themselves because of the present inadequate intrastate service at the points served by appellee; that appellant expects to gain some volume, but West doubted that there would be very much traffic diverted from the persons served by appellee — the diversion largely would come from private carriers and not common carriers.

On behalf of appellee, J. B. Holloway, president of H and L Delivery Service, testified that appellee operates terminals only at Hattiesburg and Gulfport. It has a considerably smaller staff and amount of equipment than has appellant. Appellee operates under its original grandfather certificate, and another certificate which it purchased in 1948. The points sought to be served by applicant are those which were purchased by appellee in 1948 from another carrier. Holloway said that appellee has an interchange relationship with appellant in certain towns; that appellee serves each route proposed to be served by appellant; that to his knowledge there has been no demand for any additional service at the points in question which appellee could not render. If a demand were made on appellee to furnish additional service, appellee was able and willing to furnish it. Appellee has not had any demands made on it with reference to the Gulfport and Biloxi neighborhood, but would render any service there which was requested of it. Appellee would lose tonnage all through its territory, if appellant were granted the certificate. Holloway said that it would be taking the intrastate tonnage out of his pocket and putting it in appellant's. He said that appellee would lose a portion of its present business over the routes in question, that it would weaken appellee to that extent, and that appellee would have equipment sitting idle because of such loss; and that appellee has been able to comply with the demand for service, and is willing to render whatever service the demand calls for. He denied that appellee had refused to interchange with appellant, and asserted that appellee had no mini-

mum requirements as to size and weight of shipments. Holloway admitted that appellee had a lot of claims unsettled, that "they all complain." He did not know of any public convenience and necessity for the granting of the certificate applied for. Holloway said that he would serve any point ten times a day if it had the traffic, but, for example, Vicksburg and Jackson did not have such a volume. He conceded that appellee had declined to accept interchange traffic from appellant in North Mississippi, on the grounds of inadequate volume. He said that appellee considers itself "as a call and demand service . . . if they call us three times a day, we are there three times a day; we don't send a truck to Jackson every day because somebody might have freight; we go there when we know we will get it."

Appellee's original certificate is a grandfather certificate, which gave appellee authority to operate over the entire State serving every point in the State and over all highways on traffic originating and destined to Hattiesburg. On May 4, 1948, it purchased the certificate of A. C. West, doing business as West Motor Lines. The purchased certificate authorizes appellee to do business from Hattiesburg to the Mississippi-Louisiana line, and from Hattiesburg to Meridian, serving all intermediate points. It also gives appellee authority to carry commodities generally over "the following irregular routes in the State of Mississippi," consisting of all points on and south of U. S. Highway 80, with certain exceptions. Appellee's certificate purchased in 1948 covers principally "irregular routes." Appellant's intrastate certificate was not introduced in the record, but an exhibit outlining the certified service states that it applies to "commodities generally." Appellant's certificate for interstate transportation authorizes appellant to engage in interstate transportation as a common carrier, generally, and defines the routes authorized as "regular routes."

On May 9, 1952, the Public Service Commission made a final order granting the requested certificate to appellant, and finding that there was a public need for the transportation proposed in the application, that applicant was fit, willing and able to perform the service, and that the granting of the application is in the public interest. The order did not designate the certificate as covering regular or irregular routes, making no distinction between them, but it applied to "general commodities."

From that order appellee appealed to the Circuit Court of the First District of Hinds County. That court found in a written opinion that H and L is not furnishing adequate service on its routes, that it was for the benefit of the public to grant the certificate to West Brothers, and that the certificate ought to be granted. However, the court thought that its issuance on this record was barred by the rule first laid down in Tri-State Transit Company v. Dixie Greyhound Lines, Inc., 197 Miss. 37, 48, 19 So. 2d 441 (1944): "A certificate should not be granted where there is existing adequate service over the route applied for, and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required." The circuit court correctly said that there was nothing in the record to show that H and L had ever been directed to furnish additional service and had refused to do so. It thought that this was a condition precedent to granting the certificate to West, and therefore reversed the grant of the certificate and denied the application for one.

The rule of the Tri-State Transit case has been followed consistently since that date. Dixie Greyhound Lines v. American Buslines, 209 Miss. 874, 48 So. 2d 584 (1950); Southern Bus Lines v. Miss. Public Service Commission, 210 Miss. 606, 50 So. 2d 149 (1951); Campbell Sixty-Six Express, Inc. v. Delta Motor Line, Inc., 67 So. 2d 252 (Miss. 1953). Apparently it is based upon

an interpretation of Code 1942, Section 7642. It is in accord with the general rule applied in other states. Annotation 67 A. L. R. 957; 37 Am. Jur., Motor Transportation, Sec. 12; 60 C. J. S., Motor Vehicles, Sec. 90, pp. 290-293, 300-302.

Appellee in its answer stated that it had not received any requests from any shippers in the territory involved for additional services, but that it was "ready, willing and able to furnish any additional equipment to properly serve the route included in this application if and when the volume of traffic requires it." The president of appellee, J. B. Holloway, made similar statements in his testimony.

The Motor Carrier Regulatory Act of 1938, being Miss. Laws 1938, Chapter 142, Code of 1942, Secs. 7632-7687, recognizes a distinction between regular and irregular carriers. Sec. 7634 (e) and (f) defines a "common carrier by motor vehicle" as a carrier transporting property over "regular routes"; and a "restricted common carrier by motor vehicle" as a carrier of property over "irregular routes." See also Secs. 7639, 7640, 7656, 7657. and Sec. 7637 (b) gives the Commission the power to establish reasonable classifications of carriers. Sec. 7637 (c) provides that the rules of the Commission shall conform as nearly as practicable to those of the Interstate Commerce Commission.

Appellant says that these Mississippi statutes make a distinction between regular and irregular routes; and that both the Mississippi and Federal Motor Carrier Acts fail to define the two types of routes, but both of them empower the respective commissions to establish classifications of carriers. Miss. Code, Sec. 7637 (b). Although the Mississippi Commission has never made a formal rule establishing such classifications, the I. C. C. has. Classification of Motor Carriers of Property, 2 I. C. C. 703 (Motor Carrier Cases 1937); Transportation Activities of Brady Transfer and Storage Co., 47 I. C. C.

23 (Motor Carrier Cases 1947), affirmed in 80 Fed. Supp. 110, 335 U. S. 875. But, appellant states, the Public Service Commission by making the order appealed from necessarily recognized the existence of these two different classes of motor carriers, and necessarily made that distinction between them. However, the Commission's order is not placed on that basis, and does not warrant that inference. The rule-making power is in the Commission, and can only be exercised by it. And the Commission has not done so.

Appellant further contends that an irregular route operation is a separate and distinct transportation service from a regular route operation, and that therefore appellee's activities are not competitive with appellant's proposed services; that the latter cannot be considered as a duplication of certificate rights of appellee. It is said that there is a distinction between the two classes of service performed for the public by appellant and appellee, and that appellee is not an existing carrier performing in fact the type of regular service proposed by appellant. Before the Tri-State Transit rule can be applied, it is contended, the facts must establish that there is an existing similar service, since the statutes contemplate two different types of property carriers.

■■■ However, as previously stated, the record does not reflect that the Public Service Commission has promulgated any rules classifying motor carriers. Appellee's grandfather certificate is not limited, but is a general authority for the carrying of commodities. The certificate which appellee purchased in 1948 is in part a general authority on the designated routes, and in part an authority for irregular routes. Appellee's certificates of public convenience and necessity cover the same routes applied for by appellant, and the same type of service proposed by appellant. So it cannot be said that the proposed certificate granted appellant by the Commission's order is not a duplicating certificate for competi-

tive services. The record reflects that appellee's present service is inadequate. Accordingly, the Tri-State Transit rule is manifestly applicable, and under it the existing carrier, appellee, must be given an opportunity to furnish such additional services as may be reasonably required. It is undisputed that the Commission did not give appellee that opportunity, so we affirm the judgment of the circuit court reversing the Commission's order and denying the application for a certificate. The Commission should have given appellee a reasonable time within which to furnish such additional service as may reasonably be required.

Appellant also argues that the appellee cannot invoke this rule by creating a situation, and thereby seeking an advantage as a result of it. But a literal application of this argument would invalidate this established rule of law.

Affirmed.

All Justices concur.