DIXIE GREYHOUND LINES, et al. *v.* AMERICAN BUSLINES.

Division A.　Nov. 13, 1950.

No. 37572 (48 So. (2d) 584)

Watkins & Eager, and Chandler, Shepherd, Herskel & Williams, for appellant, Dixie Greyhound Lines, Inc.

878

**Stevens & Canada,** for appellant, Southern Bus Lines, Inc.

Guy Mitchell, Sr. & Jr., Hugh A. Hopper and D. D. McDonald, for appellee, American Buslines.

884

## Lee, J.

By its application in July 1948, as amended in September following, American Buslines, Inc., sought from the Mississippi Public Service Commission a certificate of public convenience and necessity to operate as a common carrier, over the following route: from the Mississippi-Tennessee state line over U. S. Highway No. 78 to Tupelo, thence over U. S. Highway No. 45 to the junction with State Highway No. 41, thence over State Highways Nos. 41 and 6 to the Mississippi-Alabama state line.

On those dates, Dixie Greyhound Lines, Inc., already held a certificate to operate over this route, except as to that part covered by State Highways 41 and 6. (It also had a certificate for the balance of State Highway No. 78 from Tupelo to the Mississippi-Alabama line, and from the intersection of U. S. Highway 45 with State Highway No. 41 south on 45 to Columbus.)

In like manner, Southern Bus Lines, Inc., already held a certificate to operate in a north and south direction through Tupelo, which covered a stretch of 10 miles on U. S. Highway No. 45 from Tupelo to Shannon.

Also, on those dates, Missala Stages, Inc., held a certificate to operate from the Mississippi-Alabama line over State Highway No. 6 to Amory; thence over State Highway No. 41 to the intersection with U. S. Highway No. 45; and thence west over No. 41 to Okolona.

Dixie, Southern, and Missala all protested against American's application.

In addition, on November 14, 1948, Dixie filed its application for authority to operate from the junction of U. S. Highway No. 45 and State Highway No. 41 east over State Highway No. 41 eight miles to Amory.

The applications were consolidated and heard by the commission on the same record. American's application, with closed doors, between Shannon and Tupelo, was granted, and Dixie's was denied.

The three protestants appealed to the circuit court of Hinds County. Supersedeas was applied for pending appeal, but it was denied. That court affirmed the order of the commission, and denied supersedeas. The protestants have appealed here.

American's application seems to have arisen out of the situation at Amory. This was a railroad town, with no demand for bus transportation, although Missala for some time operated one schedule a day in that area. But, with the prospect of taking off trains, the need for such transportation became obvious. American explored the territory with the idea of furnishing this service, and contemplated the opening of a route from Birmingham to the Mississippi-Alabama line; thence over the route covered by its application; and thence from the Mississippi-Tennessee state line to Memphis. Of course, this set-up had a strong appeal to the citizens in and around Amory. Dixie's line was only 8 miles from Amory, but no one had ever requested it to enter that area. On account of this indifference, it had never sought an extension. When it heard of American's purpose, it sent representatives into that section, but American was more strongly entrenched and appeared to have the preference.

Both sides introduced an array of witnesses. For American there were 91, and for the protestants, 81. Each side also offered, in their respective interests, resolutions from civic clubs and public authorities. The record contains over 900 pages, in addition to a large number of exhibits.

The evidence for American supported these propositions: The area around Amory was in great need of bus transportation. The one schedule a day of Missala was so inadequate as to amount to no transportation at all. A certificate to American would open up a large area, and put the people in close touch with Birmingham and Memphis—the two largest cities in that vicinity. Dixie's service on Highways 45 and 78 was inadequate,

and had been inadequate through the years. The derelictions of Dixie consisted of too few busses; insufficient schedules; overcrowded busses with people standing; failure to stop on flag because of overcrowding; absence of, or insufficient, stations at several places; and some grievances against personnel. On cross-examination, however, some witnesses admitted that, commencing in 1948, the service had been improved. (The records disclosed that Dixie has been operating about 12 schedules over this route since that time.) All admitted that they had made no complaint either to Dixie or to the commission. Some witnesses were partisans for American, but others said they were not taking sides—they merely desired the service, and it was immaterial to them as to which company should furnish it.

The evidence for Dixie was to this effect: It had been operating this route since the early 30's. During the war period it was difficult to get busses; and the travel was so heavy that it could not carry all passengers. At times the busses were crowded, and some passengers necessarily stood; at the end of the war period, and, as the busses on order were delivered, they were put on the route and the service was greatly improved. By early 1948, it was getting all the busses needed and running all schedules necessary to take care of the patronage. Many witnesses testified that it had not been necessary for them to stand, or, if so, simply on unusual occasions; crowded busses were rare; the equipment was good; the drivers were courteous; and sufficient busses and schedules were being operated. The service was satisfactory and adequate. No complaint of insufficient service had ever been made to the company. No complaint of any kind had been made to the commission. If its extension of 8 miles to Amory was granted, Dixie, in cooperation with Missala, would run sufficient schedules out of Amory each day, and such others as might be found necessary. Dixie, although contending that it

was furnishing adequate service, signified that it was ready, willing and able to furnish additional service, and meet any requirement which the commission might impose.

The evidence for Missala was to this effect: It had run only one-schedule into Amory because there had been no demand for bus transportation. It had lost money on the operation. It had worked out an arrangement in cooperation with Dixie to afford Amory and that area adequate transportation. Now that there has been an awakening of the public need for this kind of transportation, it can work out substantial traffic toward the east and to Birmingham also.

From all of the evidence, it is clear that the Amory area stands in need of bus transportation. The adequacy of the service of Dixie on Highways 45 and 78 was in dispute—American denying, and Dixie affirming. But, the number of schedules being run since 1948 indicated a greatly improved service. No complaint of any kind as to adequacy of service was made to Dixie, or to the commission; and the commission itself had preferred no such charge. Dixie was ready, willing and able to provide all necessary service, and to comply with any order of the commission thereon. Missala, in cooperation with Dixie, was ready to run sufficient schedules out of Amory each day. American's proposed route covers about 140 miles in Mississippi. Amory is approximately 120 miles from the Tennessee-Mississippi state line, and 20 miles from the Mississippi-Alabama line. It is only 8 miles from Highway 45 over which Dixie operates. Thus to serve the area of Amory—only 8 miles off of Dixie—or the remaining distance to the Mississippi-Alabama line—only 28 miles off of Dixie, under a certificate to American, would require a duplicate certificate over 112 miles of Dixie's route, and 28 miles over Missala's.

Both sides in an effort to uphold their respective positions and to defeat the contentions of their adver-

saries on the several questions involved, have cited a large number of cases from this, and other jurisdictions, to which we have given due and careful consideration.

However, our statutes and several of our own cases form the pattern for the determination of this controversy.

In the granting of certificates, the commission must give due consideration to existing facilities. Paragraph (c), Section 8, chap. 142, Laws of 1938, now Section 7642, Code of 1942, provides: ''In determining whether the certificate required by this Act shall be granted, the Commission shall, among other things, give due consideration to the present transportation facilities over the proposed route of the applicant, the volume of traffic over such route, the financial condition of the applicant, and the condition of the highway over the proposed route, or routes.''

This Court, in Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, 583, in pointing out the duties of the commission, under Chapter 142, Laws of 1938, with particular reference to unfair competition, and other pertinent responsibilities, said: ''*The lawmakers necessarily knew that economy and efficiency in the service to the public could not be promoted by the granting of several certificates of public convenience and necessity to different carriers over the same route, nor could* the safety and welfare of the public in the use of the highway, the protection of the roadbed from unreasonable, improper, or excessive use, and *the franchise rights of existing carriers from destructive competition, be made secure without proper safeguards to guarantee the accomplishment of those ends.*'' (Emphasis supplied.)

With the statute law as it was, Section 7642, supra, and the interpretation of the legislative intent, Dixie Greyhound Lines, Inc. v. Public Service Commission, supra, it is patent that the public policy did not look with favor

on unnecessary duplicate certificates. When the commission granted a certificate, manifestly it considered the holder sufficiently able and responsible to carry out his representations and obligations. Section 7649, Code of 1942. The powers vested in the commission enabled it to require performance if any dereliction, in fact, occurred. Section 7651, Code of 1942. The commission could depend on the readiness of the public to complain if service was inadequate. This afforded the opportunity to require performance. Upon failure so to do, it could take necessary action to assure satisfactory and adequate service. Chapter 4, vol. 6, Code of 1942.

It is no wonder then, with such background, this Court in Tri-State Transit Co. v. Dixie Greyhound Lines, 197 Miss. 37, 19 So. 2d 441, 444, laid down the following rule: *"The rule is,* and we find no authority to the contrary, *that a certificate should not be granted where there is existing adequate service* over the route applied for, *and, if inadequate, unless the existing carrier has been given an opportuntiy to furnish such additional service as may be required."* (Emphasis supplied.) In other words, if the existing service is adequate, it would not be fair to allow a competitor on the same route. This does not foster monopoly, because the rates and charges must be just and reasonable. Section 7657, Code of 1942. Likewise, if the commission is apprised that the service is inadequate, it should give the carrier an opportunity to furnish the additional service as it may require. This rule rests on sound philosophy, and accords with reason, common sense, and justice. The certificate holder must make a large outlay of capital, he must buy and equip busses, arrange for depots, and organize personnel. If, at occasional intervals, the service is not perfect or adequate, another franchise should not be granted, if the existing carrier is ready, willing and able to conform to such order as the commission may make in respect to additional facilities.

In Tri-State Transit Co. v. Gulf Transport Co., 201 Miss. 744, 29 So. (2d) 825, this Court, while citing Tri-State Transit Co. v. Dixie Greyhound Lines, supra, for another purpose, must have had before it, the full significance of the rule there announced. In that case the Court held that the commission was not in error in declining to grant the partially duplicate certificate applied for by Gulf Transport Company. It noted the fact that Tri-State had received no complaint as to its service, and that the commission had not requested it to add additional busses or to change its schedules. Besides, it was prepared and ready to add such additional busses and make such changes in its schedules as the commission might request. Consequently, while the Court did not expressly refer to the rule announced in Tri-State Transit Co. v. Dixie Greyhound Lines, supra, it did not depart therefrom, and the decision came within that pronouncement.

The appellants, in their reply brief, ask this Court to take judicial notice that, although American obtained its certificate, and supersedeas was allowed by neither the commission nor the circuit court, yet it has put into effect only one bus, starting from the Mississippi-Alabama line at 6:00 a. m. and arriving at the Mississippi-Tennessee line at 9:30 a. m., and leaving there at 3:00 p. m., and returning to the point of origin at 6:00 p. m. It is urged that this slight schedule shows that American will not operate the intrastate part of this route unless it also obtains an interstate certificate. American makes no response to this contention.

The appellants, in their reply brief, also ask this Court to take notice of the fact that, upon the hearing by the Examining Board of the Interstate Commerce Commission at Birmingham, the application of American for an interstate permit was denied. It is contended that, although this hearing was subsequent to the trial of this cause, it shows that American is not in position to make

good on its offer of service over this route. Neither does American respond to this contention.

However, in view of our conclusion, it is not necessary to consider these questions, or either of them.

We rest this decision on the manifest intention of the Legislature in its enactments, as construed by this Court, in the cases relied on hereinabove. We find no better statement of the rule concerning the grant of duplicate certificates than that announced in Tri-State Transit Co. v. Dixie Greyhound Lines, as quoted, supra.

██ The certificate granted to American duplicated the routes of both Dixie and Missala Stages, and was contrary to the law, and the action of the commission thereon is reversed, and judgment is entered here canceling the certificate.

██ The denial of a certificate to Dixie for the 8 miles from the junction of Highways 41 and 45 to Amory was in accordance with the law, inasmuch as Missala Stages represented that it, in cooperation with Dixie, could and would provide adequate service for the Amory area, and the granting of such certificate would have been duplicating as against Missala. This phase of the order of the commission is affirmed.

Reversed and rendered in part, and in part, affirmed.