CAMPBELL SIXTY-SIX EXPRESS, INC. *v.* DELTA MOTOR LINE, INC., et al.

Sept. 28, 1953

No. 39037      36 Adv. S. 4      67 So. 2d 252

*Watkins & Eager,* Jackson, for appellant.

*Byrd, Wise & Smith,* Jackson, for appellee, Illinois Central R. R. Co.

*Stevens & Canada,* Jackson, for appellees, Cook Truck Lines, Inc., D. C. Hall Transport, Inc. and Delta Motor Line, Inc.

Reply brief for appellant, Campbell Sixty-Six Express, Inc.

LOTTERHOS, J.

This appeal involves action of the Mississippi Public Service Commission in granting to appellant authority to operate as a common carrier of freight by motor vehicle over U. S. Highway 51 between Winona and the Mississippi-Louisiana line.

Prior to the inception of the proceeding before the Commission, Campbell Sixty-Six Express, Inc., hereinafter referred to as Campbell, held intrastate certificates from Winona north to the Tennessee line on U. S. Highway 51, east and west of Winona on U. S. Highway 82, from Jackson to Meridian on U. S. Highway 80, and from Meridian south to the Alabama line on U. S. Highway 45. It had no intrastate rights on U. S. Highway 51 south of Winona. It held certain interstate rights in this state, but they are not involved here.

In October or November, 1952, Campbell applied to the Commission for a certificate of public convenience and necessity under Section 7640, Code of 1942, over U. S. Highway 51 from Winona south to the Louisiana line. This application, of course, applied only to intrastate traffic. At that time, other common carriers held authority to transport freight intrastate between points along that route from Winona to the Louisiana line, as follows: Illinois Central Railroad Company, the entire distance; Delta Motor Line, Inc., later referred to as Delta, the entire distance; D. C. Hall Transport, Inc., later referred to as Hall, from Winona to Jackson; Cook Truck Lines, Inc., later referred to as Cook, from Jackson to the Louisiana line; and T. S. C. Motor Freight Line, from Jack-

son to the Louisiana line. The last named carrier did not appear in opposition to the petition of Campbell, and hauled in truck load quantities only over the route named. It may be ignored.

The Commission heard the application of Campbell, and, over the protest and objection of the railroad and Delta, Hall and Cook, granted a certificate of public convenience and necessity to Campbell from Winona to the Louisiana line, under Section 7641, Code of 1942. The chairman of the Commission filed a dissenting opinion.

From the action of the Commission, the protestants appealed to the Circuit Court of Hinds County under Section 7683, Code of 1942. The appeal was heard and considered by that court, and a judgment was entered, reversing the order of the Commission and cancelling the certificate which had been granted to Campbell.

Campbell, as appellant, has now appealed from the judgment of the circuit court. The appellees here are the Illinois Central Railroad Company, and Delta, Hall, and Cook, motor carriers.

Each common carrier by motor vehicle engaged in intrastate operations in this state is required to obtain from the Public Service Commission a certificate of public convenience and necessity. Sec. 7639, Code of 1942. It is provided (Sec. 7642, Code of 1942) that, in determining whether such certificate shall be granted, the Commission shall, among other things, "give due consideration to the present transportation facilities over the proposed route of the applicant, the volume of traffic over such route, the financial condition of the applicant, and the condition of the highway over the proposed route, or routes."

In Dixie Greyhound Lines v. American Buslines, 209 Miss. 874, 48 So. 2d 584, wherein the action of the Commission in granting a certificate to American Buslines, affirmed by the circuit court, was reversed by this Court, the rule governing the Commission in such cases was re-

viewed and restated. The Court first quoted from Section 7642, Code of 1942, and then said:

"This Court, in Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, 583, in pointing out the duties of the commission, under Chapter 142, Laws of 1938, with particular reference to unfair competition, and other pertinent responsibilities, said: '*The lawmakers necessarily knew that economy and efficiency in the service to the public could not be promoted by the granting of several certificates of public convenience and necessity to different carriers over the same route, nor could* the safety and welfare of, the public in the use of the highway, the protection of the roadbed from unreasonable, improper, or excessive use, and *the franchise rights of existing carriers from destructive competition, be made secure without proper safeguards to guarantee the accomplishment of those ends.*' (Emphasis supplied.)

"With the statute law as it was, Section 7642, supra, and the interpretation of the legislative intent, Dixie Greyhound Lines, Inc. v. Public Service Commission, supra, it is patent that the public policy did not look with favor on unnecessary duplicate certificates. When the commission granted a certificate, manifestly it considered the holder sufficiently able and responsible to carry out his representations and obligations. Section 7649, Code of 1942. The powers vested in the commission enabled it to require performance if any dereliction, in fact, occurred. Section 7651, Code of 1942. The commission could depend on the readiness of the public to complain if service was inadequate. This afforded the opportunity to require performance. Upon failure so to do, it could take necessary action to assure satisfactory and adequate service. Chapter 4, Vol. 6, Code of 1942.

"It is no wonder then, with such background, this Court in Tri-State Transit Co. v. Dixie Greyhound Lines, 197 Miss. 37, 19 So. 2d 441, 444, laid down the following rule: '*The rule is,* and we find no authority to the

contrary, *that* ██ ██ *a certificate should not be granted where there is existing adequate service over* the route applied for, *and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required.'* (Emphasis supplied.) In other words, if the existing service is adequate, it would not be fair to allow a competitor on the same route. This does not foster monopoly, because the rates and charges must be just and reasonable. Section 7657, Code of 1942. Likewise, if the commission is apprised that the service is inadequate, it should give the carrier an opportunity to furnish the additional service as it may require. This rule rests on sound philosophy, and accords with reason, common sense, and justice. The certificate holder must make a large outlay of capital, he must buy and equip busses, arrange for depots, and organize personnel. If, at occasional intervals, the service is not perfect or adequate, another franchise should not be granted, if the existing carrier is ready, willing and able to conform to such order as the commission may make in respect to additional facilities.''

Now, let us see what proof was developed before the Commission in the case at bar. Campbell is fully equipped and able to render proper service to points on U. S. Highway 51 between Winona and the Louisiana line. There is no doubt of that fact on this record. The railroad company and Delta are already rendering service on this route; Hall is serving the route from Winona to Jackson; and Cook is operating from Jackson to the Louisiana line. Is their service adequate for the public need? Should another motor carrier of freight be authorized to operate on this highway between these points in order to give the public proper transportation facilities? These were the questions for the Commission to decide in this case.

We can, perhaps, eliminate the railroad from consideration at this point, since Campbell is a motor carrier, and there are certain differences between the types of

service which motor carriers and railroads can furnish, each class of transportation facility having its own advantages.

It is shown in the record that Delta, Hall and Cook operate their trucks over their respective routes on daily schedules, and that they have the equipment necessary for their operations. The sufficiency of their operations is clearly shown, unless the witnesses for Campbell have made an issue of fact for the Commission to resolve. Therefore, we turn now to a consideration of Campbell's proof. As heretofore stated, it is clearly shown that Campbell is fully prepared and able, and also willing, to render intrastate service on the route involved. The proof offered with respect to the claimed inadequacy of existing service, or, in different language, the need for Campbell's entry into the field, is briefly summarized as follows:

Two witnesses who ship merchandise from Jackson to points on this route testified that if Campbell receives a certificate they will use its transportation service. They did not state that the existing service is inadequate or deficient. Four witnesses who operate businesses in Brookhaven (about 55 miles south of Jackson) claimed that the present service is inadequate. An automobile dealer (the first of the four witnesses mentioned) said that he receives a substantial amount of parts from Jackson, adequate transportation service is not at present available from Jackson, he has attempted to secure the needed service but could not, he wants quick service, he usually has shipments made by bus except when too heavy for bus transportation, and it usually takes three or four days for Delta to make delivery after he places his order for parts. An employee of a lawn mower manufacturing company at Brookhaven stated that the available freight service is not satisfactory. But the manufacturing plant was not yet in full production, and the only instance of use of the present facilities that he mentioned was a shipment of metal to Jackson for plating. He said he shipped

it by Delta, but they got it the second day, so he had the plating company ship it back by bus.

The owner of a Brookhaven glass company and a cabinet company stated that his companies receive shipments from Jackson and other points. He said that the existing service "will stand some improvement" and is not satisfactory. When he wants quick service he has shipments made by bus. He needs overnight service from Jackson to Brookhaven. The owner of a Brookhaven building supply company stated that he receives freight from Jackson. He said the present service is not satisfactory because of delay, though Cook's service is apparently all right. The four witnesses last mentioned stated that they will use Campbell's freight service if authority is granted to it. Their complaint as to existing freight service (from Jackson to Brookhaven) was that it is not fast enough.

Campbell offered no proof to show any inadequacy of service by the already operating carriers except between Jackson and Brookhaven, and the only objection made to that service by the four witnesses was that it is not fast enough. As against this testimony, the appellees showed the operation of daily service, with details as to schedules and deliveries. For example, their Exhibit 17, discloses Cook's intrastate shipments from Jackson to points south in December, 1952. This exhibit shows that, excluding weekends and holidays, only six out of 195 shipments failed to be delivered on the day after receipt by Cook. Fifty-four of these shipments were to Brookhaven, and all except one were delivered on the day after receipt by the carrier.

■■■ The rule of law on judicial review of the action of an administrative tribunal in the exercise of its legislative function, to the effect that a court is limited to a determination of whether the board or commission has exceeded its lawful powers or has acted arbitrarily, is well known, and is to be carefully followed. ■■■A court

must not interfere with the proper exercise of the power and discretion of the legislative branch; but it may and should pass upon the judicial question involved in a determination of the limits applicable to the legislative power attempted to be exercised in the particular case. See 42 Am. Jur., Public Administrative Law, Sec. 191, p. 564. The function of the courts in reviewing such administrative proceedings has been stated by this Court, in Dixie Greyhound Lines v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, in this language: ██ ██ ''That a court of competent jurisdiction has the power to review any order made by an administrative commission to determine whether it is supported by substantial evidence, within the meaning of that term, as hereinbefore defined, or is purely arbitrary and capricious, beyond the power of the commission to make, or violates some statutory or constitutional right of an interested party, is so well settled as not to be open to any doubt.''

When the record made before the Public Service Commission came before the circuit court on appeal under Section 7683, Code of 1942, that court found in the judgment that ''there was error committed by the Commission in granting said order of the Commission of January 9, 1953, in that there was no substantial evidence to support the findings of the Commission that public convenience and necessity justifies or requires the granting of a certificate of public convenience and necessity'' to Campbell. Upon a careful review of this record, as made before the Commission, we agree with that finding made by the court below. Such evidence as Campbell, the appellant, adduced on the critical point under consideration by the Commission, dealt only with the supposed inadequacy of existing service from Jackson to Brookhaven. It did not seek to question the quality of transportation service rendered to and from other points. Even with respect to the Jackson-Brookhaven freight deliv-

eries, the testimony did little more than show that four businessmen of Brookhaven were dissatisfied with the speed of deliveries to them. This lack of evidence is contrasted with the full proof on behalf of appellees in the record, showing daily service rendered by Delta, Hall, and Cook, with adequate facilities to take care of any anticipated increase in traffic.

In the decision of this case we have not considered and we do not rule upon the proposition, discussed in the briefs, of the extent to which, and the methods by which, an already operating carrier, rendering inadequate service, should be required and allowed to improve its quality and quantity of service before a certificate is granted to a would-be competitor. That question is not reached, inasmuch as we hold that there is no substantial evidence in this record of inadequacy or insufficiency of service on the part of the carriers now operating, and hence no substantial evidence to sustain the Commission's action.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.