T. H. Garrett, d/b/a Garrett Truck Line *v.* Delta Motor Line, Inc., et al.

No. 39599 June 13,1955 81 So. 2d 245

October 3, 1955

82 So. 2d 577

*William F. Winter,* Grenada; *Geo. P. Cossar,* Charleston, for appellant.

*Byrd, Wise & Smith,* Jackson; *Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellees.

Roberds, P. J.

Garrett applied to the Mississippi Public Service Commission for a certificate of public convenience and necessity to operate as a limited common carrier of freight by motor vehicles over the highways of Mississippi be-

ginning in Jackson, thence north on U. S. Highway 51 to Grenada, serving all points between and including Jackson and Grenada, and north from Grenada on State Highway 7 to and including Holly Springs, serving all points between Grenada and Holly Springs, including the University of Mississippi; thence return to Jackson over the same route.

The application excluded commodities of unusual value and in large bulk, dangerous explosives, livestock, household goods, and commodities requiring special equipment "and those injurious or contaminating to other lading."

The application was resisted by Delta Motor Line, Inc., D. C. Hall Transport, Inc., and the Illinois Central Railroad Company.

After an extended hearing before the Commission it granted the certificate. Protestants appealed to the circuit court. That court, on review of the record, affirmed the action of the Commission as to Highway 7 but reversed such action as to Highway 51. From that judgment Garrett appeals here. There is no cross appeal by any protestant. In other words, the action of the Commission as to Highway 7 is not in question. Only the rights of Garrett over Highway 51 are involved on this appeal. Shall we affirm, reverse or modify the order of the Commission?

Certain principles have been laid down by this Court as guides in the issuance or nonissuance of such certification. It will be of help in the solution of the case to have some of these in mind.

We will not reverse the action of the Commission unless such action is beyond the powers of the Commission, violates some statutory or constitutional rights of the parties, is not supported by substantial evidence, or is arbitrary or capricious. Magee Truck Lines, Inc. v. Bond, 190 Miss. 428, 200 So. 586; Tri-State Transit Co. of La., Inc. v. Gulf Transport Co., 201 Miss. 744, 49 So. 2d 825.

On the other hand, where the circumstances bring the action within one or all of the stated invalidating conditions this Court has the power, and it is its duty, to reverse or modify such action. Magee Truck Lines, Inc. v. Bond, supra; Tri-State Transit Co. of La., Inc. v. Mobile & Ohio Transport Co., 191 Miss. 364, 2 So. 2d 845; Tri-State Transit Co. of La., Inc. v. Gulf Transport Co., supra; Dixie Greyhound Lines, Inc. v. Miss. Public Service Commission, et al., 190 Miss. 704, 200 So. 579.

This Court, in several cases, in order to conserve the rights of the parties and the interest of the public, has adopted the rule that carriers may be given permits to traverse the public highways of the state, but, at the same time, require them to do so with closed doors over segments thereof, if this be necessary to conserve the rights of existing carriers, even though the closed door segment is being served by existing carriers. Dixie Greyhound, Inc. v. Miss. Public Service Commission; and Tri-State Transit Co. v. Gulf Transport Co., supra.

In case the service being rendered by the existing carrier is inadequate and unsatisfactory such carrier should be given the opportunity to correct the defects and render proper service before issuing to another carrier a certificate to operate over the same territory. Tri-State Transit Co. of La., Inc. v. Gulf Transport Co., supra; Dixie Greyhound Lines v. American Bus Lines, 20 Miss. 874, 48 So. 2d 584; Southern Bus Lines, Inc. v. Miss. Public Service Commission, 210 Miss. 606, 50 So. 2d 149; Campbell Sixty-Six Express, Inc. v. Miss. Public Service Commission, 218 Miss. 198, 67 So. 2d 252.

Courts of other states have announced the test that public necessity and convenience contemplates that the inhabitants of a given area of the state should be afforded the same, or equivalent, service as inhabitants of other areas generally, insofar as this may be feasible and practical under the circumstances. Missouri, Kansas & Oklahoma Coach Lines v. State, 183 Okla. 278, 81 P.

2d 660. In Chicago R. I. & P. Ry. Co. v. State, 126 Okla. 48, 258 P. 874, the court defined "necessity" as meaning "a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure, or both — without which the people generally of the community are denied to their detriment, that which is enjoyed by other people generally, similarly situated."

■■■ Permission may be granted an applicant to traverse a highway already being traveled by an existing carrier where such new travel is necessary to properly serve the new territory and render such new service financially feasible. Whether en route service is permitted, or closed doors required, depends upon the circumstances. Dunlap v. Dixie Greyhound Lines, 178 Tenn. 532, 160 S. W. 2d 413; State ex rel Pitcairn v. Public Service Commission, 232 Mo. 535, 111 S. W. 2d 222, and Union Bus Company v. Douglas, 123 Fla. 292, 166 So. 582.

We now set out the ultimate essential facts disclosed by the record.

■■■Delta Motor Line, Inc., and D. C. Hall Transport, Inc., the protesting motor carriers, hold certificates of public necessity and convenience as common carriers of freight over U. S. Highway 51 from Jackson, Mississippi, to Memphis, Tennessee, and return, which embraces that part of said Highway 51 included within the application of Garrett. Before the hearing of the application herein Campbell's Sixty-Six Express, Inc., was also granted a permit to serve the territory here involved on Highway 51. There may be other motor carriers holding such permits. The main line of the Illinois Central Railroad also runs parallel to said highway. The territory adjacent to Highway 51 from Jackson to Grenada and return is well served. It is true that some two or three witnesses expressed some dissatisfaction but this was based mainly upon failure of the witnesses to collect damage claims from the motor carriers. But no complaint was ever

made to the Commission of inadequacy of service by the existing carriers. No request was ever made by the Commission to any of them to correct a deficiency in, or improve, their freight service. On the other hand, the contesting motor carriers, testifying through their authorized agents, offered to improve and correct any defective service when so requested by the Commission. Under the facts and the rules above set out no pick-up or delivery rights on Highway 51 should have been granted to Garrett except as to freight originating in or destined to the area covered in the permit to serve Highway 7.

 ██ Whether closed door travel on said Highway 51 should have been required, except for freight originating in or destined to Highway 7 area, we will now consider.

The Commission granted full freight transportation rights, except as to bulk, weight character of freight, etc., as set out in the permit, in the Highway 7 area. That area includes three counties in north Mississippi and a number of municipalities. As stated, the action of the Commission in granting that permit is not contested on this appeal. However, the circumstances applicable to the area covered by that permit have a direct bearing upon the rights, if any, which should be granted Garrett on Highway 51. The record discloses that this territory has large potential commercial possibilities. It includes service to the University of Mississippi. It is shown that prompt and efficient motor freight service, at reasonable rates, are closely connected with the purchase of supplies, equipment, etc., at that University. It is further shown that there are a number of important industrial enterprises located in Highway 7 area.

It is further developed, without dispute, that freight for Highway 7 area originating at Grenada and south thereof is carried to Memphis by the motor carriers now having Highway 51 permits; there unloaded and reloaded or transferred by trailer, depending on the weight and

bulk of the cargo, to another motor carrier, which receiving carrier thence transports the freight to Holly Springs and either itself or through another transferee, transports the freight to point of destination. Specifically, a cargo of freight shipped from Jackson to Coffeeville would be carried to Memphis, there transferred to another motor carrier, thence to Holly Springs, thence to Coffeeville, a distance of 322 miles. The distance from Jackson to Coffeeville over Highways 51 and 7 is 120 miles. This shipment then has consumed some three to seven days time and traveled over the highways an extra distance of two hundred miles. That is the method by which all consignees in the Highway 7 territory are served from the south. This inconvenience in time and distance has resulted in many of the inhabitants of Holly Springs, Oxford, the State University, Water Valley, Coffeeville, and smaller intermediate towns, increasing their purchases of commodities in Memphis and other cities north of the Highway 7 area, at the same time reducing, to a large extent, such purchases in Jackson, and other Mississippi cities, south of said area. This, according to the evidence, has materially affected the industrial and commercial interests of the area, as well as that of a number of cities in the central and southern parts of the state, especially the city of Jackson, in which is located the state capitol. Garrett proposed to correct this. He has pledged himself to daily service between Jackson and the Highway 7 area. Only by such a service can the inhabitants of Highway 7 area receive transportation service of freight comparable with inhabitants in other areas of the state.

It is provided in Section 7642, Miss. Code 1942, that the Commission in determining whether the certificate should be granted should take into consideration, among other things, the volume of traffic over the route. It is urged by protestants that permission to Garrett to use Highway 51 uselessly clutters up the highway. However, the Commission evidently considered that question and,

in granting Garrett full right to use such highway, decided that such use would not violate the injunction of the statute in that regard. We cannot say the action of the Commission in that respect was without substantial evidence, or was arbitrary or capricious.

Summed up then, this is the situation:

First, grant of service in Highway 7 area is not now contested.

Second, Highway 51 is being adequately served.

Third, it is necessary, if Highway 7 area is to be properly served, that applicant have the right to travel Highway 51 between Jackson and points in Highway 7 area.

The obvious solution of this peculiar situation is that Garrett should be given the right to traverse Highway 51 to and from Jackson in serving his Highway 7 territory, but the permit over Highway 51 should be with closed doors, except as to freight originating in or destined to the Highway 7 area served by him.

The Commission will issue to him another permit in accordance with this opinion that the judgment entered pursuant thereto. It is so ordered. The cost of the appeal will be charged half to Garrett and half to protestants.

Affirmed in part, reversed in part, and judgment rendered.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.*, concur.

ON SUGGESTION OF ERROR

ETHRIDGE, J.

Appellees complain of our decision, 81 So. 2d 245, granting appellant a limited certificate, by modifying the Public Service Commission's order so as to provide for a restricted type of closed door operation between Jackson and Grenada on U. S. Highway 51. It is argued that this issue was not submitted to the Commission and that it was not proper, for the first time on appeal to this Court, to provide for a closed door operation as to part of the route. But this position overlooks

the facts of this case and the statutory reviewing authority of this Court.

Code of 1942, Section 7683, states that on appeal from Commission orders the court "shall review, affirm, reverse or modify the same and enter therein such order or judgment as may be right and just"; and that the granting or denial by the Commission of an application for a certificate of public convenience and necessity "shall be construed as a judicial finding, and appealable as such." The grant by the Commission of unrestricted certificate rights over Highway 51 necessarily and inherently included the right to a restricted or closed door type of operation. The greater included the lesser. In two cases the Mississippi Commission has imposed closed door restrictions on certain routes, although the applications did not ask for, or mention, such restrictions on those routes. Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579 (1941); Tri-State Transit Company of La., Inc. v. Gulf Transport Company, 201 Miss. 744, 29 So. 2d 825 (1947). Moreover, this record clearly shows that permission to appellant to travel Highway 51 to Jackson was necessary in order to properly serve the new territory and to render such service financially feasible. It is undisputed that the Highway 7 territory is inadequately served. The only service rendered to that area by appellees is to route shipments consigned to the Highway 7 territory through Memphis, Tennessee. It is our duty, as stated in Code Section 7683, to modify the Commission's order and to render such judgment concerning its "judicial finding" as "may be just and right." The modification of the Commission's order was clearly within the above quoted provisions of Code Section 7683 and the facts reflected in this record.

None of the earlier Mississippi cases dealing with certificates of public convenience and necessity are pertinent to the present issue. Here a substantial territory and segment of the population of the state, consisting of the

Counties of Marshall, Lafayette and Yalobusha, and part
of Grenada County, and their citizens are without any
adequate trucking service via State Highway No. 7. In
order to properly serve this new territory and to render
such new service financially feasible, it is necessary that
appellant have permission to traverse Highway 51. Man-
ifestly the Commission had these facts in mind when it
granted the unrestricted certificate. But that action im-
pinged in part upon the Tri-State Transit rule. Hence
the modification by this Court. The length of the route
over which a limited type of competition with an exist-
ing carrier exists is a fact to be considered along with
others in determining whether the principle applied in
this case is pertinent.

The principles of law applied in the original decision
herein are in full accord with the general text authori-
ties on the subject. 60 C. J. S., Motor Vehicles, Section
90 (3) (a), pp. 297-298; Vol. 1, Part 2, Blashfield, Cy-
clopedia of Automobile Law and Practice (1948), Sec-
tions 426, 427. The facts of this case necessitate the ap-
plication of a restriction upon or a limited exception to
the Tri-State Transit rule. Tri-State Transit Company of
Louisiana, Inc. v. Dixie Greyhound Lines, Inc., 197 Miss.
37, 48, 19 So. 2d 441, 444 (1944). But this does not im-
pair the essential soundness of the Tri-State doctrine,
where the facts support its relevancy.

Suggestion of error overruled.

All justices concur, except *Gillespie, J.,* who dissents
in part.

GILLESPIE, J., concurring in part and dissenting in
part:

I agree that in a proper case permission may be grant-
ed an applicant to traverse a highway already being
traveled by an existing carrier where such new travel is
necessary to properly serve the new territory and ren-
der such service financially feasible. The authorities
cited in the original opinion applied this rule but only

where the new line comes into competition with an existing carrier in a *limited territory*. In one case the duplication was only 18 miles and the so-called new territory was approximately 108 miles. In another case, the entire length of the line was 139 miles and the closed door portion duplicating another line was only 28 miles. I find no case where the rule as to duplication has been applied except to a limited territory and where there was a full development of all facts necessary to an application of the rule. After a careful consideration of the briefs on suggestion of error, I am convinced that this case was not sufficiently developed to justify us in applying the stated rule.

I think the answer to the question would be to remand the case to the Commission for development of the facts on the closed-door, and related issues.

The territory of duplicate service is not limited in this case. The length of the duplicate service is 116 miles and the length of the new territory is about 80 miles.

The Commission had before it a question of granting appellant, applicant there, unrestricted rights each way from Jackson to Holly Springs, via Highway 51 from Jackson to Grenada, and Highway 7 from Grenada to Holly Springs. No reference was made to a closed door operation on Highway 51 and the closed door issue was not developed by the parties, nor even considered by the Commission. That issue was not discussed in any of the briefs either before the circuit court or this Court.

No proof appears in the record from which any finding could be made as to whether applicant would be provided with enough revenue from the closed door operation to make the entire operation profitable or economically sound. Apparently the Commission did not consider the alternative of interchange of freight at Grenada, and whether such would best serve the Highway 7 area.

There has been no finding by the Commission or the courts as to whether the applicant is willing and able to operate the certificate ordered by this Court. Section 7641 of the Motor Carrier's Act requires that the Commission, before it issues a certificate of public convenience and necessity, "find the proposed operation justified, and that the applicant is fit, willing, and able to properly perform the service proposed." The Commission could not have made the finding required by this section because the certificate ordered by this Court was never proposed by the applicant and no testimony was developed on that issue.

The facts in this case are almost identical with Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, et al., 190 Miss. 704, 200 So. 579, except the Dixie case involved the transportation of passengers. The principle laid down in the opinion on suggestion of error in the Dixie case, supra, with reference to a feature of the case not presented to the Commission and there developed as a distinct issue, seems to me to be directly in point. It is not a question of the power and authority of this Court to modify an order of the Commission. The point is whether there is a factual basis for the exercise of such power.

Appellees are justifiably surprised that this Court would order the closed-door operation over the larger part of the entire route when such was never proposed, never developed as an issue, never considered by the Commission, and no proof appears in the record that such an operation is feasible, and no finding has or could have been made that the applicant is fit, able and willing to properly perform the service so ordered. Nor has the Commission had the opportunity of considering, in view of the finding of this Court that the Highway 51 area is adequately served, whether an interchange of freight at Grenada should be ordered rather than the closed-door operation.