JONES, Justice:
This is an appeal by Hinds-Rankin Metropolitan Water and Sewer Association, Inc., from a final decree of the Chancery Court of the First Judicial District of Hinds County affirming an order of the Mississippi Public Service Commission which required the appellant to reimburse landowners-appellees, Jimmy Dickard Builders, Inc., Jackson Land Improvement Company, Inc., MI VAC, Inc., and White Realty, Inc., for certain costs expended by them in constructing water distribution facilities in their subdivision, such reimbursement to occur when and as the facilities were connected to and were made a part of appellant’s water system in its certificated area. We affirm.
Being Mississippi corporations that own 944.2 acres of land in the First Judicial District of Hinds County, Mississippi, ap-pellees hereinbefore named are in the process of developing this tract into residential subdivisions that will eventually contain approximately 2,500 houses. In this tract, appellees are presently developing 42 acres which will be known as “Presidential Hills Subdivision, Part I” and upon which 153 dwelling houses will be constructed. All of the 944.2 acres of appellees’ land is located within an area that has been certificated by the Mississippi Public Service Commission to Hinds-Rankin Metropolitan Water and Sewer Association, Inc., for the provision of water and sewage facilities; and appellant has a 12-inch water main that comes within 1,400 feet of Presidential Hills Subdivision, Part I.
Having provided the necessary sewage system and sewage lagoon for Presidential Hills Subdivision, Part I, appellees acted pursuant to the provisions of Sections 7716-51 through 7716-59, inclusive, Mississippi Code 1942 Annotated (Supp.1971) and wrote appellant a letter dated October 1, 1968, wherein appellant was requested to provide water service to Presidential Hills Subdivision, Part I, and to make within fifteen days thereof a written commitment to furnish such water facilities within a reasonable time. With the letter were sent plans and specifications for the proposed water distribution facilities. Appellant was placed on notice that its failure or refusal to construct the water facilities *548 would be cause for the appellees-landown-ers to pursue, in addition to any other legal or administrative remedy provided by law, any or all remedies available under the provisions of Sections 7716-51 through 7716-59, Mississippi Code 1942 Annotated (Supp.1971).
On October 8, 1968, appellant wrote ap-pellees a letter wherein it agreed to provide water service to Presidential Hills Subdivision, Part I, in accord with its “customary extension policy heretofore enacted by the Mississippi Public Service Commission in such cases.” The terms of appellant’s extension policy were listed as follows:
(a) The water main to the subdivision will be extended by Metropolitan for the first 100 feet, free of cost to the developer; should such water main exceed 100 feet in length, a $2.00 per foot contribution-in-aid-of-construction will be paid by the developer for any such excess footage.
(b) A $1.00 per front foot, per lot, contribution-in-aid-of-construction will be paid by the developer for all mains laid within the subdivision. Corner lots will be measured on the side to which service is made available.
(c) At the time the builder, or owner of a lot, makes formal applications for a water tap, a fee of $85.00 will be charged at that time.
(d) All applicable sales taxes will be paid by the party or parties making the payments, as aforesaid.
At the time of its letter to appellees, however, appellant had not received the approval of its extension policy from the Mississippi Public Service Commission; therefore, in its letter to appellees, appellant recited the terms of its proposed extension policy, which is in conflict with the provisions of Sections 7716-51 through 7716-59, Mississippi Code 1942 Annotated (Supp.1971).
Replying to appellant’s letter on October 15, 1968, appellees rejected appellant’s extension policy and stated that appellant’s letter had been construed to be a refusal by appellant to construct the necessary facilities within its certificated area and a refusal to provide appellees’ subdivision with water service. Appellees’ reply letter stated:
. your letter . . . completely ignores the legislative mandate of Senate Bill 2154, Mississippi Laws of 1968, to the effect that the ultimate cost of such public utility development shall fall on the public utility owning and operating the service.
On March 7, 1969, appellees petitioned the Mississippi Public Service Commission (Utility Docket No. U-1811) and sought under the provisions of Senate Bill 2154, Laws of 1968 (Sections 7716-51 through 7716-59, Mississippi Code 1942 Annotated (Supp.1971) ), and the Public Utilities Act of 1956, inter alia, the following:
1. Approval of the sum of $27,230.18 as the reasonable cost of construction of subdivision mains and 153 service lines, from main to property line, for the 153 lots in Presidential Hills Subdivision, Part I.
2. Apportionment of $27,230.18 among the 153 lots for reimbursement to appellees by appellant as and when each customer is connected for commencement of service.
Appellant filed its answer and protest, wherein it stated that it had made extensive improvements' to its water system in the vicinity of Presidential Hills Subdivision, Part I, and that it was ready, willing and able to furnish adequate water utility service in accord with its service extension policy; however, at the time of this hearing, appellant’s service extension policy still had not been approved by the Commission.
Contending that the sum of $27,230.18 is a reasonable cost of constructing water *549 mains and 1S3 service lines within the subdivision, appellees testified that initially they had obtained bids from three utility contractors and that the lowest and best bid in the sum of $25,688.85 was submitted by W & S Construction Company of Jackson, Mississippi. Subsequently, appellees advertised for bids as required by the provisions of Sections 7716-51 through 7716— 59, Mississippi Code 1942 Annotated (Supp.1971); and again W & S Construction Company submitted the lowest and best bid in the same amount, i. e., $25,688.-85. To this amount an engineer’s fee of six percent of the contract price was to be added, i. e., $1,541.33, the total cost being $27,230.18. Because 153 units are to be serviced, appellees contended that they should be reimbursed by appellant at the rate of $177.9,7 per unit, within thirty days of the date that each unit is connected.
As previously stated, appellant has an existing 12-inch main approximately 1,400 feet from the nearest point in the subdivision where the connection can be made. Although appellant agreed that the sum of $27,230.18 is a reasonable cost of constructing water mains and 153 service lines within the subdivision, it denied that it should be required to reimburse appellees for any of that amount. Appellant further contended that the cost of running a connecting main from its 12-inch main 1,400 feet to the subdivision main would be approximately $6,000; however, appellees stated that they were ready, willing and able to contribute whatever proportionate amount up to the full sum of $6,000 that the Commission should find to be reasonable and proper as their share of connection costs.
A full hearing having been held before the Commission, it issued its order on April 8, 1969. The Commission based its order on the terms and provisions of Sections 7716-51 through 7716-59, Mississippi Code 1942 Annotated (Supp.1971), and disregarded appellant’s proposed extension policy. The Commission found (1) that appellant’s letter dated October 8, 1968, and its subsequent failure to make a written commitment of service constituted a refusal of service within the purview of Sections 7716-51 through 7716-59, Mississippi Code 1942 Annotated (Supp.1971); (2) that the reasonable cost of the water distribution system is $27,230.18; (3) that the maximum figure of such reasonable cost that should be approved by the Commission within the purview of Sections 7716-51 through 7716-59 is $22,950; (4) that the sum of $22,950 should be apportioned for ultimate reimbursement to appellees by appellant on the basis of $150 per water customer connected, such amount to be paid when and as provided by Sections 7716-51 through 7716-59; (5) that $6,000 would be the reasonable cost of connecting the subdivision mains to appellant’s existing main; (6) that appellees should not be required to share any portion of such connection expense; and (7) that appellees should not be required to share any of the cost incurred by appellant for setting individual water meters, inasmuch as Rule 11 of the Commission requires that such expense be assumed by the public utility.
From the order of the Mississippi Public Service Commission, Hinds-Rankin Metropolitan Water and Sewer Association, Inc., appealed to the Chancery Court of the First Judicial District of Hinds County. The Commission’s order having been affirmed by the chancellor, this appeal was brought.
Appellant contends:
(1) that Sections 7716-51 through 7716— 59, Mississippi Code 1942 Annotated (Supp.1971) constitute an unconstitutional delegation of legislative authority;
(2) that the order of the Commission finding that the extension of service by Metropolitan Water is economically feasible and requiring Metropolitan Water to defray all but a minor portion of the cost of extension is unjust, unreasonable, confiscatory and discriminatory and deprives Metropolitan Water of its property without just compensation in violation of Article *550 III, Section 14, Constitution, State of Mississippi and Amendment 14, Constitution of the United States;
(3) that Sections 7716-51 through 7716— 59 deprive appellant of equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States;
(4) that regulation by the Commission under Sections 7716-51 through 7716-59 of water utilities’ charges to the owner or customer for extension of facilities is, in effect, rate regulation and the power of the Commission to regulate rates of Metropolitan Water is based upon an unconstitutional amendment to Section 7716-04, Mississippi Code 1942 Annotated (Supp.1971); and
(5) that the order of the Commission as affirmed by the lower court requires appellant to discriminate unduly between users of ljke service under like conditions, and denies to appellant and its customers equal protection of the laws.
As to the delegation of Legislative powers, Section 7716-01, Mississippi Code 1942 Annotated (Supp.1971) states, in part:
D. The term “public utility,” when used in this act, includes persons and corporations, or their lessees, trustees and receivers now or hereafter owning or operating in this State equipment or facilities for:

(4) The transmission, distribution, sale or resale of water to the public for compensation ; or the collection, transmission, treatment or disposal of sewage, or otherwise operating a sewage disposal service, to or for the public for compensation.
Section 7716-51, Mississippi Code 1942 Annotated (Supp.1971) states, in part:
If any public utility as defined in paragraph D(4) of Section 1, Chapter 372, Laws of 1956 [§ 7716-01], as heretofore or hereafter amended shall fail or refuse to construct within its certificated area any facilities necessary to provide public utility service as described in said paragraph, or shall fail or refuse to make written commitment to do so, within a reasonable time after written request for such service by any owner of property, which request shall specify with reasonable particularity the type of service desired, such owner may, in addition to any other legal or administrative remedy provided by law and either separately or jointly with any other owner or owners in the area affected, pursue either of the following alternatives or a combination thereof:

(b) File with the Mississippi Public Service Commission a set of proposed plans for construction of such facilities and connection of the same with the system or systems of the utility or utilities affected, such plans to conform in all respects to all reasonable requirements of said commission and any other public body having lawful authority to establish standards of construction, and the owner shall give twenty (20) days’ notice of such filing to said commission and any other public bodies aforesaid and to the public utility or utilities holding a certificate for the area affected. If, after such notice and opportunity for protest and hearing thereon, the commission shall approve such plans or any modification thereof as being supported by present or future public convenience and necessity, the owner may give notice as hereinafter provided and then proceed to let contracts for the construction of the same or to construct the same and, upon proper completion thereof and conveyance or assignment of such facilities and easements to the utility, the holder of the certificate for the area and service affected shall be obliged promptly to connect the same to its systems and provide such service.
Appellees filed their petition under Subsection (b) above. The plans, specifi *551 cations and drawings were filed as exhibits ; and notice was duly given to appellant, City of Jackson, State Board of Health, Board of Supervisors of Hinds County, and Mississippi Air and Water Pollution Control Commission.
Section 7716-52, Mississippi Code 1942 Annotated (Supp.1971) states:
If such plans or any modification thereof shall be approved by the commission as provided by paragraph (b) of Section 1 hereof [§ 7716-51], the commission may enter an order either in conjunction with such approval, if notice has sufficiently dealt with the subject matter, or pursuant to special application and notice thereof to the parties, that will determine whether the right and responsibility of constructing the facilities for making such connection shall devolve on the owner or the utility and whether the whole or any part of the reasonable expense of connecting such facilities with the system or systems of the utility or utilities affected should be borne initially by such utility or utilities. If the commission should relieve any utility affected from initially undertaking the whole or any part of such connection expense, the commission may nevertheless include the portion of such expense to be initially borne by the owner in the cost of facilities for which the owner may be reimbursed as hereinafter provided.
Section 7716-53, Mississippi Code 1942 Annotated (Supp.1971) states:
In the event an owner is authorized to construct or cause to be constructed the whole or any part of such proposed facilities pursuant to paragraph (b) of Section 1 hereof [§ 7716-51] or pursuant to such authority and Section 2 hereof [§ 7716-52] the owner may first reach written agreement with the holder of the certificate for the area and service affected as to the reasonable cost of doing so, or for a maximum figure of reasonable cost of doing so, which reasonable cost in either event shall be subject to approval of the Mississippi Public Service Commission. If no such agreement can be reached, the owner may publish notice that bids will be received for construction of the same, which notice shall be published in the manner and for the time as required by law for publication of such notices with respect to contracts for construction by boards of supervisors of counties of this state, but no contract shall be consummated pursuant thereto until the contract shall be approved by the aforesaid commission. No such contract shall be executed unless the contractor shall furnish a good and sufficient surety bond, executed by the contractor or contractors and one or more surety companies authorized to do business in this state for the faithful performance of such contract.
Section 7716-54, Mississippi Code 1942 Annotated (Supp.1971) states:
Upon approval by the said commission of the reasonable cost of construction of the necessary facilities for furnishing such service and the whole or a reasonable part of the expense of connecting, such facilities with the system of the utility affected, the owner may apply to said commission for an apportionment of such costs among the proposed outlets for consumer service, and any final order of allocation by the commission shall be binding upon the owner and the public utility affected. After such allocation has been made, the public utility affected shall be obliged to reimburse to the owner that portion of the reasonable cost of construction of such facilities and connection expense or the portion thereof approved by the commission, to the extent of the respective amount thereof allocated to any proposed consumer outlet, such reimbursement to be made within thirty (30) days of commencement of consumer service at such outlet.
Appellant contends that Sections 7716-51 through 7716-59, Mississippi Code *552 1942 Annotated (Supp.1971) constitute an unconstitutional delegation of legislative authority. We find this contention to be without merit.
73 C.J.S. Public Administrative Bodies and Procedure § 29, pp. 324-325 (1951) states:
In determining whether the delegation of power to an administrative body is an unconstitutional grant of legislative power or a proper grant of administrative power, the distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, which delegation is void; and the delegation of authority or discretion as to the execution of a law to be exercised under, and in pursuance of, the law, to which delegation no objection can be made. .

[A] statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligation.
73 C.J.S. Public Administrative Bodies and Procedure § 30, p. 326 (1951) states:
Accordingly, where the legislature sufficiently prescribes a policy, standard, or rule for the guidance of the administrative body, or otherwise confines it within reasonably definite limits, authority may be delegated to the administrative body to carry out the legislative purposes in detail, and to exercise administrative power to regulate and control.

Sections 7716-51 through 7716-59, Mississippi Code 1942 Annotated (Supp.1971) do not constitute a legislative delegation of power to make the law to the Mississippi Public Service Commission or any other administrative agency. These sections do constitute a delegation to the Mississippi Public Service Commission of authority as to the execution of the law thereunder.
In Sections 7716-51 through 7716-59, the Legislature has clearly prescribed a standard to enable the Mississippi Public Service Commission to carry out the legislative purpose of such sections; and this standard guides the Commission in ascertaining the operative facts to which the sections apply. Section 7716-51 requires that before the Commission can require a water or sewage utility to extend its service into a particular area, it must determine whether “present or future public convenience and necessity” require or will require the extension.
73 C.J.S. Public Administrative Bodies and Procedure § 33, p. 334 (1951) states:
The legislature may commit to an administrative agency the determination of necessity and convenience. .
In Garrett v. Delta Motor Line, 224 Miss. 559, 565, 566, 81 So.2d 245, 247 (1955), this Court stated:
Courts of other states have announced the test that public necessity and convenience contemplates that the inhabitants of a given area of the state should be afforded the same, or equivalent, service as inhabitants of other areas generally, insofar as this may be feasible and practical under the circumstances. Missouri, Kansas & Oklahoma Coach Lines v. State, 183 Okl. 278, 81 P.2d 660, 661. In Chicago R. I. & P. R. Co. v. State, 126 Okl. 48, 258 P. 874, 877, the court defined ‘necessity’ as meaning ‘a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure, on both — without which the people generally of the community are denied, to their detriment, that which is enjoyed by other people generally, similarly situated.’
Appellant next contends that the present order of the Commission finding *553 that the extension of service by Metropolitan Water is economically feasible and is supported by present or future public convenience and necessity and requiring Metropolitan Water to defray all but a portion of the cost of extension is unjust, confiscatory and discriminatory and deprives Metropolitan Water of its property without just compensation in violation of Article III, Section 14, Constitution, State of Mississippi and Amendment 14, Constitution of the United States. We find appellant’s second contention to be without merit, for the order is in accordance with the statutes.
The only question involved in this cause is: In order to obtain water and sewer service from a public utility association having the certificate to serve the area in which the prospective customer lives, must the prospective customer pay all or most of the utility company’s extension costs ? Or put another way: Upon whose shoulders must a water and sewer company’s extension and expansion costs rest — the prospective customers or the water and sewer company? Ordinarily, this is a question to be determined by the Mississippi Public Service Commission; and as this Court stated in Garrett, supra:
We will not reverse the action of the Commission unless such action is beyond the powers of the Commission, violates some statutory or constitutional rights of the parties, is not supported by substantial evidence, or is arbitrary or capricious. . . . (224 Miss. at 564, 81 So. 2d at 247).
Under Sections 7716-52 and 7716— 54, Mississippi Code 1942 Annotated (Supp.1971), the Mississippi Public Service Commission has the authority to determine whether the right and responsibility of constructing the facilities for making such connection shall devolve on the owner or the utility, whether the whole or any part of the reasonable expense of connecting such facilities with the system of the utility affected should be borne initially by such utility, and whether the utility should be required to reimburse to the owner that portion of the reasonable cost of construction of such facilities and connection expense or the portion thereof approved by the commission.
The Commission having been authorized by statute to make such a determination and its finding having been supported by substantial evidence, we do not agree with appellant’s contention that to require it to shoulder all but a minor portion of the cost of its extension and expansion within its certificated area is unjust, confiscatory or discriminatory. Nor does such requirement deprive appellant of its property without just compensation, for by making such extension appellant obtains additional customers for its services.
Appellant next contends that Sections 7716-51 through 7716-59 deprive appellant of equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. This contention is based on the fact that Sections 7716-51 through 7716-59 apply only to water and sewer facilities as defined in Section 7716-01 D(4), Mississippi Code 1942 Annotated (Supp.1971) and do not apply to telephone, gas and electric utilities. This assignment is also without merit.
16A C.J.S. Constitutional Law § 490, pp. 249-251 (1956) states:
Peculiar circumstances which surround particular persons, corporations, or things, and which afford a justifiable reason for differentiation, are ample grounds for holding laws which discriminate for or against them valid. Discrimination is not illegal where there is between the classes some natural and substantial difference germane to the subject and purposes of the legislation. So, where experience shows evils arising from the activities of some specific group, a remedy may be provided by a statute applicable only to that group, and *554 the classification will not be overthrown because it does not extend to all subjects which legitimately might be included, . provided it is based on a practical distinction.
[T]he legislature is not required to cover all evils of a like character in a single act, but may proceed step by step, and may validly limit its regulation to those situations where the need is most acute. The legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where it deems the need to be greatest.
The regulation of a particular subject is not arbitrary and invalid because another subject of equal importance is not regulated, and legislation aimed at one evil is not invalid because it does not prevent another evil.
16 Am.Jur.2d Constitutional Law section 496, p. 865 (1964) states:
Great liberality has always been indulged in the matter of classification. The Fourteenth Amendment was not designed to prevent all exercise of judgment by a state legislature of what the interests of the state require, and to compel it to run all its laws in the channels of general legislation. The courts cannot require the legislature to specify its reasons for a classification. And the deference due to the judgment of a state legislature on the matter of statutory classifications alleged to deny equal protection of the laws is especially to be observed when local conditions that the court cannot know may affect the answer to the crucial question whether the court can say, on its judicial knowledge, that the legislature could not have had any reasonable ground for believing that there were such public considerations as to justify the distinction made»
16 Am.Jur.2d Constitutional Law section 497, p. 866 (1964) states:
A classification, though discriminatory, is not arbitrary nor violative of the equal protection clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. . . .
As stated in the case of New York Central Railroad Company v. Lefkowitz, 46 Misc.2d 68, 259 N.Y.S.2d 76, 104 (1965):
It is well established that the prohibition of the equal protection clause goes no further than the invidious discrimination (Williamson v. Lee Optical of Oklahoma, Inc., supra, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563). Neither our own constitution nor the equal protection clause of the Fourteenth Amendment takes from our legislature the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard. Neither is it required that every state regulatory statute apply to all in the same business or industry. Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind (Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485). . . .
Water and sewage are health hazards and are properly classified together. Miss.Code 1942 Ann. § 2414 (1956). The Mississippi Air and Water Pollution Commission (§ 7106-113, Miss.Code 1942 Ann. (Supp.1971)), which is a creature of the State to help prevent pollution of the air and water of the State, was also a party to this proceeding.
Appellant’s fourth and fifth assignments of error are without merit in this cause; and we will not discuss them for the following reasons:
(1) this cause does not involve any rate regulation question; (2) the legal question here is: Who should pay the costs of appellant’s extension and expansion in its certificated area?; (3) neither the fourth nor the fifth assignment of error is determinative of the legal question in this cause; (4) the right to regulate rates, if *555 any, is based on a valid classification. (§ 7716-04, Miss.Code 1942 Ann. (Supp.1971)); and
(5) the fifth assignment involves classification which we hold to be valid.
We think that the chancellor acted properly in affirming the order of the Mississippi Public Service Commission. The final decree of the lower court is affirmed.
Affirmed.
RODGERS, P. J., and BRADY, SMITH and SUGG, J J., concur.