TRI-STATE TRANSIT CO. OF LOUISIANA, INC., v. DIXIE GREY-
HOUND LINES, INC.

(In Banc. Oct. 9, 1944.)

[19 So. (2d) 441. No. 35691.]

Stevens & Stevens, of Jackson, for appellant.

42

Watkins & Eager, of Jackson, McClure & Fant, of Sardis, and Longstreet Heiskell, of Memphis, Tenn., for appellee.

44

Argued orally by **J. M. Stevens, Sr.**, and **J. M. Stevens, Jr.**, for appellant, and by **W. H. Watkins** and **James McClure**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

The appellant, the Tri-State Transit Company, has a certificate of public necessity and convenience (a franchise) from the Interstate Commerce Commission to do an interstate business between Jackson and the Tennessee line, which is only a few miles south of Memphis in that

state, and from the Public Service Commission of this state to do a local business between those points. It makes six round trips per day between Memphis and Jackson, four of which operate as through busses and two local.

The appellee, the Dixie Greyhound Lines, has a franchise from the Interstate Commerce Commission to carry on an interstate business between Jackson and the same point on the Tennessee line with closed doors; in other words, under the franchise it can neither take on nor let off passengers between those two points. It applied to the Public Service Commission of the state for a franchise to add a local business and in addition the right to take on and let off in the state interstate passengers. It had no such right from the Interstate Commerce Commission but claimed that it would apply for it after the state had granted the franchise it was asking for. The Tri-State Company protested against the granting to the Dixie Company of such additional franchise. There was a hearing before the Public Service Commission at which thirty-nine witnesses testified for the Dixie Greyhound Company and thirty-one for the Tri-State Company. The Public Service Commission denied the franchise. From that judgment an appeal was prosecuted to the circuit court by the Dixie Company where there was a trial on the record made before the Public Service Commission. The circuit judge reversed the judgment of the Public Service Commission to the extent that he permitted the Dixie Company to operate busses as applied for until the expiration of six months after the end of the war. From that judgment the Tri-State Company appeals to this court and the Dixie Company cross-appeals.

In considering the questions involved it would be very well to have in mind the language of the statute declaring the policy of the state regarding the use of its highways for public traffic, which is found in Section 2, Chapter 142, Laws 1938, Section 7633, Vol. 6, Code 1942:

"It is hereby declared to be the policy of the legislature to regulate motor carriers in the public interest to the end that the safety and welfare of the public in its use of the highways and of the transportation agencies by motor vehicle used thereon may be practiced; that the property of the State in its highways may be protected from unreasonable, improper and excessive use; that the inherent advantages of highway transportation may be recognized and preserved; that sound economic conditions in such transportation and among such carriers may be fostered; that the service by motor carriers may be adequate, economical, and efficient; that reasonable charges may be made therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; that relations between motor carriers and other carriers may be improved and coordinated; and that cooperation may be maintained with the governments of the United States, and the several States, and with their duly authorized officials in carrying out the purposes and provisions of this Act. This Act shall apply to persons and motor vehicles engaged in interstate commerce to the extent permitted by the Constitution and laws of the United States and as provided herein."

Pond on Public Utilities, page 10, has this to say with reference to the policy: "If, as experience seems to justify and require, regulation is to take the place of competition in this as in other fields of public utilities, in order to avoid the expense of needless duplication of investment and operating cost for the purpose of securing the best possible service at the least expense, motor buses, trucks, and all similar forms of common carrier service must be regulated and controlled by impartial state commissions of trained experts having jurisdiction over public utilities generally, and especially over all forms of communication and transportation."

The evidence for the Dixie Company tended to show that the public convenience and necessity would be pro-

moted by granting the franchise it applied for. The evidence for the Tri-State Company, which was substantial, tended to show the contrary. Everybody knows that during the war there has been and is now great overcrowding on all public carriers of passengers. The courts are authorized to take judicial notice without any proof of what everybody knows. It is true that the evidence tended to show that the Dixie Company had some vacant seats on its busses operating between Memphis and Jackson. It also tended to show that the busses operated by it on Highway 49 were as much overcrowded as any in the state. It appeared from the evidence that the overcrowding on the Tri-State's busses between Memphis and Jackson occurred principally between local stations. No one ever made complaint before the Public Service Commission that the Tri-State Company was not furnishing adequate service, nor did the Commission of its own initiative make such complaint.

With reference to the finding of facts by the Public Service Commission, Section 7815, Vol. 6, Code 1942, provides as follows: ''All findings of the commission and the determination of every matter by it shall be made in writing and placed upon its minutes, and proof thereof shall be made by a copy of the same duly certified by the secretary under the seal of the commission; and whenever any matter has been determined by the commission, in the course of any proceeding before it the fact of such determination, duly certified, shall be received in all courts and by every officer in civil cases as prima facie evidence that such determination was right and proper; and the record of the proceedings of the commission shall be deemed a public record, and shall at all seasonable times be subject to the inspection of the public.''

The findings of fact of the Public Service Commission are prima facie correct, ''the reviewing court can not substitute its judgment for that of the Commission and disturb its finding where there is any substantial basis in

evidence for such finding or where the ruling of the commission is not capricious or arbitrary." 42 C. J. 692.

In Tri-State Transit Co. v. Mobile & Ohio Transp. Co., 191 Miss. 364, 2 So. (2d) 845, 847, the court used this language in discussing this question: "The sole question presented to us for the decision is whether or not the action of the Commission was arbitrary, not supported by substantial evidence, or was manifestly against the evidence." To the same effect is Gulf Mobile & O. R. R. Co. et al. v. Luter Motor Express Co., 194 Miss. 407, 12 So. (2d) 420.

Those principles apply to the cross-appeal as well. The cross-appeal involves whether it was error for the circuit court to grant the Dixie Company a franchise for local travel until six months after the duration of the war. The Public Service Commission had substantial evidence before it that the public necessity and convenience did not require such an order.

The rule is, and we find no authority to the contrary, that a certificate should not be granted where there is existing adequate service over the route applied for, and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required. Chicago Rys. Co. v. Commerce Commission ex rel. Chicago Motor Coach Co., 336 Ill. 51, 167 N. E. 840, 67 A. L. R. 938 and authorities in the annotations. Dixie Greyhound Lines, Inc., v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So. (2d) 489, does not hold to the contrary. The second paragraph of the opinion in that case in response to the suggestion of error simply meant to convey the idea that counsel in the case had stated that principle too broadly.

As we understand, the Dixie Company contends that the finding of facts of the circuit judge should not be disturbed by this court unless unsupported by any substantial evidence. Of course, the only way to find out whether there is such support is to go to the evidence before the Public Service Commission. In other words, the circuit

court decides the question and when it comes up to this court the decision here is not controlled by the opinion of the circuit court but by its own consideration of the testimony before the Commission.

Applying these principles to the case here results in the reversal of the judgment on both direct and cross-appeals.

Reversed and judgment of the Public Service Commission reinstated.

SPECIALLY CONCURRING OPINION.

**Griffith, J.,** delivered a specially concurring opinion.

The contest in this case is over the route known as Highway 51, between Jackson and Memphis. The Tri-State Company has an intrastate as well as an interstate certificate on this route, while the Dixie Lines' has an interstate certificate only. The Dixie Lines has both an intrastate and an interstate certificate between Jackson and Memphis over Highways 49 E. and 49 W. between Jackson and Clarksdale, connecting there with Highway 61 to Memphis. The application here is by the Dixie Lines for an intrastate certificate over Highway 51, so that if granted, two lines would be operating intrastate as well as interstate between Jackson and Memphis over Highway 51, while only the Dixie Lines would be operating over the other route.

It is said by Dixie that it is undisputed that its busses running two a day each way between Jackson and Memphis over Highway 51 have each on an average from 10 to 12 vacant seats, and they say that it is undisputed that the busses of Tri-State on the same route are generally overcrowded, the aisles being filled with passengers standing over tiresome distances, and they say that in view of this condition it would. be to the convenience of the public, as well as a saving in the transportation service, that they should be permitted to open their doors to fill

up their vacant seats, thus relieving the pressure of passengers upon Tri-State.

It is equally undisputed that the overcrowding of the busses exists to the same extent on the routes of the Dixie Lines over Highways 49 and 61, and it was well within the province and discretion of the Public Service Commission to indicate to Dixie that instead of opening its doors to intrastate passengers on Highway 51 in order to fill its busses, one of its busses each way should be transferred to the other route, so that there the vacant seats will be filled, and thereby taking care of its own route, instead of seeking to interfere in taking care of Tri-State's route. And particularly so in view of the admitted fact that to open Dixie to local passengers on Highway 51 would add not less than an hour to the Dixie schedule between Jackson and Memphis.

And the Commission could well anticipate or prevision as a practical certainty that if Dixie's doors were opened there would be the same rush of local passengers to get on its busses as is the case in regard to Tri-State busses, everybody wanting to take the first bus that comes along, with the result that as many would be standing in the aisles on Dixie busses as is the case on Tri-State busses, to say nothing of the public confusion that would be caused by two local passenger bus lines on the same route, and when the complaints would come the Commission would have difficulty in determining upon which of the two competing lines to place it. The Commission, on denying Dixie's application, was acting in accord with what experience has shown to be best, namely, that so far as local traffic is concerned, to permit only one carrier on each route, and to see to it that the carrier adequately serves the public, as to which the Commission has full power. When the Commission is acting as it has acted here, within the scope of its mature and reasonable discretion, the judicial courts should not undertake to interfere or assume to direct how the state's motor carrier lines shall be operated. The law in such cases the court

may pronounce and order enforcement, but the supervision of the operation of these lines is with the Commission.

What has been said is of some of the reasons which sustain the action of the Public Service Commission in denying the application for an additional local certificate, and on the assumption that the courts have the authority to review an order of the Commission denying or refusing to grant such a certificate. When a competititve certificate has been granted the order is reviewable, Dixie Greyhound Lines v. Mississippi Public Service Comm., 190 Miss. 704, 200 So. 579, 1 So. (2d) 489. But otherwise than under the so-called grandfather clause, is an order denying a certificate subject to judicial review? The granting of a certificate of public necessity and convenience is legislative in its nature, unless made mandatory under facts standardized by the legislature. In the absence of specific standardized facts, may the legislature impose or confer on a judicial court the authority to issue a certificate to a motor carrier prospective in its character, and if it could not do so directly, may it do so indirectly by the allowance of an appeal from an order of the Commission which has refused to grant the certificate?

This question was not raised by the parties, and has not been considered for decision by the court, the decision being placed on the merits, and this additional opinion is filed so that it may not be assumed that because the court has passed on the merits in the case it has impliedly held that the order is one which the court must review.

**Roberds, J.,** delivered a specially concurring opinion.

I concur in the opinion in this case because of the asserted fact, uncontradicted, that the Tri-State Transit Company has not been requested by the Public Service Commission to put into service additional busses sufficient

to accommodate the traveling public, and that, if so requested, it will do so.

## PARTIALLY CONCURRING OPINION.

**Smith, C. J.**, delivered a partially concurring opinion.

I concur in the result here reached. The statement in the opinion that everybody knows "that during the war there has been and is now great overcrowding on all public carriers of passengers" and the holding that "the courts are authorized to take judicial notice without any proof of what everybody knows," are not necessary for the decision of this case and I prefer to express no opinion thereon. The overcrowding of busses of the two parties to this proceeding was conceded at the trial and supported by evidence. The overcrowding vel non of busses on highways other than the one here involved is not material hereto and taking judicial notice thereof adds nothing to the rights of the parties hereto.