CAMPBELL SIXTY-SIX EXPRESS, INC. *v.*
DELTA MOTOR LINE, INC., et al.

No. 42579          March 25, 1963          151 So. 2d 191

*Overstreet, Kuykendall, Perry & Phillips,* Jackson, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada, Phineas Stevens,* Jackson, for appellees.

LEE, P. J.

Campbell Sixty-Six Express, Inc. held Mississippi intrastate authority to operate as follows: Between the Mississippi-Tennessee state line and Winona, Mississippi, over U. S. Highway 51 and return, serving all intermediate points; between Meridian and Jackson, Mississippi, over U. S. Highway 80 and return, serving all intermediate points; between Meridian and Columbus, Mississippi, over U. S. Highway 45 and return, serving intermediate points with certain exceptions; and between Columbus and Greenville, Mississippi, via Winona, over U. S. Highway 82 and return, serving all intermediate points. This authority was acquired by purchase from two different carriers, then operating over different parts of those routes.

The company filed its application with the Public Service Commission to amend its existing authority by the allowance of what it designated "alternate routes" from Jackson to points in the state which it was authorized to serve. These requests were as follows: Over U. S. Highway 51 between Jackson and Winona, with closed doors; over U. S. Highway 49 and 49E between Jackson and Greenwood, with closed doors; and over

U. S. Highway 49 and 49W between Jackson and Indianola, with closed doors.

Protests against the grant of such authority were filed by Viking Freight Company, which has authority to render service between Jackson and Indianola, via U. S. Highway 49 and 49W, and points west of Indianola on U. S. Highway 82, and certain other authority not necessary to mention here; and also by Delta Motor Line, Inc., which has authority to render service between Jackson and Winona over U. S. Highway 51, and between Jackson and Greenwood via U. S. Highways 49 and 49E. Delta also holds irregular route authority for service between Jackson and all points within the State west of U. S. Highway 51 and north of U. S. Highway 80. Delta's authority obviously covers all of the basic area.

The applicant offered a number of witnesses to show a lack of dependable overnight service from Jackson to points on Highway 82 west from Winona to Greenville, and vice versa. Certain business people from the City of Jackson testified that their competition comes out of Memphis; that it is imperative that they have overnight delivery to points in the Highway 82 area; that they were not getting it, whereas it was afforded to their competitors, and that this deficiency was the greatest obstacle to the sale of their products in that area; and that the service was inadequate. A number of witnesses from various points in that area, customers and patrons of Jackson business firms, complained that the service had been inadequate, saying that they would buy more goods in Jackson if they could get overnight deliveries. Because of this inadequacy and the fact that there was such service out of Memphis, a larger per cent or perhaps practically all of their purchases were being made in the Tennessee city. Several had complaints on losses. Most of them said they will use Campbell, if they will make overnight deliveries. Quite a

number said that they will use any carrier, which will afford prompt delivery. The business of nearly all of these witnesses was with Delta. Some of them had complained to Delta. None of them had filed complaints with the Commission. The users of Viking appeared to be satisfied with the service which had been rendered by that carrier.

The applicant's position was that it is impossible for it to take a shipment from Jackson and make a quick delivery because its truck must go to Meridian over Highway 80, thence north over Highway 45 to the intersection with Highway 82, and thence west to the area about which complaint is made. The distance is great and the expense excessive. On the contrary, if its authority is amended, as prayed for, it can make direct runs to Winona, to Greenwood, and to Indianola and Greenville and make overnight deliveries in all instances, and that it will do so.

Viking, in its oral and documentary evidence, presented a case of excellent operation, capable of affording adequate service along its route. Some of the witnesses seemed not to be aware of the fact that this company is a carrier. Contacts and advertising by which the shipping public could be apprised of this service would doubtless result in increased business for this carrier.

Delta offered an elaborate explanation of the way and manner of its operation both by oral and documentary evidence. It frankly admitted that, in 1960, prior to the filing of this application, it had experienced financial difficulties. In working out this situation by trial and error, some mistakes had occurred; but it improved its financial situation and opened certain terminals, which had been closed down. Witnesses gave a detailed explanation of the operation of the special trucks from Jackson to Winona, Jackson to Greenwood, and Jackson to Indianola and Greenville, and returns, and how such

operations assure overnight deliveries. The amount of freight daily, in and out of Jackson, to and from the Winona, Greenwood, Indianola and Greenville areas was shown in various schedules, demonstrating that the real volume of freight for transfer is to these larger towns and cities. Freight receipts showing the date of shipment and the date of delivery, in great numbers, were offered in evidence. Except where shipments were received on Fridays and thus delivered on Mondays following, and where holidays intervened, the overwhelming majority of these receipts showed overnight deliveries from Jackson to the Highway 82 area. It was also shown that, inasmuch as the great volume of freight from Jackson to the Highway 82 area goes to the four principal cities named above, the grant of petitioner's application would make that company a competitor for such business, and would therefore have the effect of diverting traffic now in the patronage of the protestants, and thus produce a shrinkage of their potential receipts. In other words, the protestants would still have to provide service for all of the smaller towns and communities, which they now serve, even though they would be losing some of the cream of the traffic for which only the applicant would be competing. A number of witnesses testified that they use Delta, and that they are well pleased with the service.

Some of the witnesses for the applicant offered freight receipts, which tended to show delayed deliveries. In some instances, there was vacillation on cross-examination. In other instances, the rebuttal evidence largely nullified the effect of such statements.

The evidence showed that each of these carriers had the necessary equipment and are financially able to provide adequate service.

The Commission, by a majority vote, granted the application and prayer of the applicant. On appeal, the circuit court reversed, set aside and held the Commis-

sion's order for naught. From the judgment entered, Campbell has appealed to this Court.

There was no substantial evidence that Viking's service was unsatisfactory in their part of the territory although some shippers seemed to be unaware of their availability. At the same time, there was sufficient evidence for the Commission to find that, in the not too remote past, the service, on the part of Delta, had not been adequate to insure overnight deliveries from Jackson to points in the Highway 82 area, and that there was a genuine need for that kind of service. On the other hand, while admitting some delinquencies in the past, Delta offered evidence that it had overcome its financial difficulties, had inaugurated and carried out new policies of operation, and made a strong showing that, for some time before and at the time of the hearing, it was giving overnight delivery to these shipments and otherwise providing adequate service in that area. Moreover, it affirmed that, if the Commission should deem the present service inadequate, Delta stood ready, and was willing and able to meet such requirements as it might direct.

It is self-evident that, if the City of Jackson is to thrive as a distribution center, its products must be as readily available as those of its competitors from other areas. This end cannot be attained if its competitors may effect delivery of their merchandise over the public transportation systems more quickly. The Commission, as a regulatory body, can have much to do with speedy delivery of merchandise if they are apprised of the situation.

Although a number of witnesses for the applicant complained of the inadequacy of the service, only one or possibly two complained to the Commission about it. Inasmuch as the Commission was not apprised of any substantial inadequacy of service, it could hardly be expected to notify the protestants that their service

was unsatisfactory or require them to furnish additional service. But, at all events, the record shows that the Commission did not inform the protestants that their service was inadequate or unsatisfactory and order and require them to furnish additional service.

(Hn 1) Hence, the answer to the question for decision on this appeal is found in the principle announced in Tri-State Transit Company of Louisiana, Inc. v. Dixie-Greyhound Lines, Inc., 197 Miss. 37, 19 So. 2d 441, to wit: "The rule is, and we find no authority to the contrary, that a certificate should not be granted where there is existing adequate service over the route applied for, and, (Hn 2) if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required." The opinion, in that case, said that Dixie Greyhound Lines, Inc. v. Miss. Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So. 2d 489, cited by appellant in the present appeal, "does not hold to the contrary." Some of the cases in which the Tri-State Transit Rule has been cited and re-affirmed are Dixie Greyhound Lines v. American Buslines, 209 Miss. 874, 48 So. 2d 584; Southern Bus Lines, Inc. v. Miss. Public Service Com., 210 Miss. 606, 50 So. 2d 149; Campbell Sixty-Six Express, Inc. v. Delta Motor Lines, Inc., 218 Miss. 198, 67 So. 2d 252; West Brothers, Inc. v. H. & L. Delivery Service, Inc., 220 Miss. 323, 70 So. 2d 870; F. & W. Express, Inc. v. Delta Motor Line, Inc., 223 Miss. 726, 78 So. 2d 887.

The applicant's proposal is not for the purpose of providing service in a territory which now has no service. Consequently, it does not fall within the principle announced in T. H. Garrett v. Delta Motor Line, Inc., 224 Miss. 559, 81 So. 2d 245, cited by appellant.

In the two cases, Movers Conference of Mississippi v. Long, 243 Miss. 214, 137 So. 2d 925, and Morgan Drive-A-Way, v. Lee, 243 Miss. 891, 139 So. 2d 863, cited by appellant, there was involved no particular route what-

ever. Obviously, they have no application to the present controversy.

It therefore follows that the judgment of the circuit court must be, and it is, affirmed.

Affirmed.

*Kyle, Arrington, Ethridge and Rodgers, JJ.,* concur.