ROBERT M. KEITH, JR., D.B.A. MONROE RADIOTELEPHONE COMPANY *v.* BAY SPRINGS TELEPHONE COMPANY, INC., et al.

No. 43186 November 16, 1964 168 So. 2d 728

*Walker, Dillard & Baldwin,* Laurel, for appellant.

*Charles R. Mayfield, Jr.,* Jackson, for the appellee, Bay Springs Telephone Company, Inc.

*Butler, Snow, O'Mara, Stevens & Cannada, Atley A. Kitchens, Jr.,* Jackson; *Drury B. Thompson, Eugene Anderson,* Atlanta, Ga., for appellee Southern Bell Telephone and Telegraph Company.

112

ETHERIDGE, J.

Bay Springs Telephone Company, Inc. (called Bay Springs) is a certificated landline, telephone public utility, in business for over fifty years. In 1957 it was granted grandfather certificates under section 5(b) of the Public Utility Act of 1956. Miss. Laws 1956, ch. 372; Miss. Code Ann. § 7716-05 (1956). In November 1962 Bay Springs filed an application with the Public Service Commission for establishment of a rate schedule and a certificate of public convenience and necessity, authorizing it to render automatic mobile, dial radio telephone service to subscribers within its certificated area. Appellant, Robert M. Keith, Jr., doing business as Monroe Radiotelephone Company (called Monroe) filed objections to the application. After a hearing, the Commission found that the type of service proposed by Bay Springs was "essentially different from the service offered" by Monroe and there was a public need for

it. It issued to Bay Springs a certificate and approved its tariff schedule.

On Monroe's direct appeal, the Chancery Court of Hinds County affirmed the agency's order. Southern Bell Telephone and Telegraph Company intervened. On Bay Springs' cross appeal, the lower court held that under existing certificates it already had the authority to render a dial radiotelephone service within its assigned area, without the necessity of obtaining an additional certificate; and the Commission erred in holding a new certificate was necessary, but that issuance of the certificate to Bay Springs (although not required) was within its jurisdiction and therefore not erroneous. The Commission's order was affirmed.

## I.

Monroe relies on the existing facility rule, sometimes in this state called the *Tri-State Transit* rule. Tri-State Transit Co. v. Dixie Greyhound Lines, 197 Miss. 37, 19 So. 2d 441 (1944). It is "that a certificate should not be granted where there is existing adequate service over the route applied for, and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required." 197 Miss. at 48, 19 So. 2d at 444. This test was applied to the issuance of certificates to public electric utilities under the 1956 act in Capital Electric Power Association v. Mississippi Power & Light Company, 240 Miss. 139, 125 So. 2d 739 (1961). *Capital Electric* held that one purpose of the act was to prevent duplicating facilities and certificates; and "an existing utility within the certificated area has the right and duty to provide the service and must be given that opportunity. If it fails, the commission can award another franchise to another utility." 240 Miss. at 151, 125 So. 2d at 743. Miss. Power Co. v. East Miss. Elec. Power Ass'n, 244 Miss.

114

40, 140 So. 2d 286 (1962); Delta Elec. Power Ass'n v. Miss. Power & Light Co., 149 So. 2d 504 (Miss. 1963).

██ ■ However, the existing facility rule does not apply unless the services and facilities to be rendered by the new certificate are duplicating and result in waste. Section 5(c) of the Public Utility Act reflects an intent "to prevent unnecessary and uneconomic duplication of such facilities as between two" utilities. See also § 5(f). The rule is a limitation upon the Commission's power to issue certificates, but it is relevant for the purpose principally of avoiding wasteful duplication of the existing utility service.

The fatal flaw in Monroe's argument is this: There was substantial evidence to support the finding of the Commission that the service which Bay Springs proposes, as a part of its general telephone service, is materially different from, and not duplicative of, the service rendered by Monroe. Hence the rule protecting the holder of an existing certificate does not apply.

■ The Commission found that "the type of service proposed by applicant is essentially different from the service offered by protestant and that there is a public need and necessity for the mobile dial telephone communication service proposed by the applicant." The areas proposed to be served, it stated, "are heavily populated, and support a variety of different businesses which have a need, and have expressed a demand for the type of automatic mobile, dial radiotelephone service proposed." Public convenience and necessity justified the proposed operation.

■ Judicial review of the Public Service Commission is based on the substantial evidence rule. ■ An order will not be reversed unless it "is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the Commission, or violates

constitutional rights.'' Miss. Laws 1956, ch. 372, § 26 (d) ;
Miss. Code Ann. § 7716-26(d) (1956).

## II.

██ ██ Because a mobile telephone service involves
the use of radio, there must be compliance with require-
ments of the Federal Communications Commission and
the Federal Communications Act. 48 Stat. 1064, 47
U.S.C.A. § 151 *et seq.* (1934). ██ ██ The person de-
siring to have a mobile communication system must
apply to the FCC for allocation of radio wave lengths
and permission to operate the required equipment. Bay
Springs, as a general communications common carrier,
will utilize radio frequencies assigned by the FCC for
use by landline telephone companies for rendering the
proposed mobile service. These frequencies do not in-
terfere with or duplicate those available or assigned to
Monroe. The latter, classified as a ''miscellaneous com-
mon carrier'' under FCC rules, is granted different
frequency ranges within which to operate.

Bay Springs' landline service extends to both county
seats of Jasper County, Paulding and Bay Springs,
and several other communities in that county. It serves
also certain certificated areas (mostly rural) in Smith,
Jones, Scott and Rankin Counties. Monroe, operating
for about six years, maintains base radio stations in
Laurel and Hattiesburg, and through them provides rad-
iotelephone service to its subscribers. It is not licensed
to operate land-line telephone service, such as is pro-
vided by Bay Springs. Bay Springs' mobile radiotele-
phone service will have a physical interconnection with
the circuits of its land-based telephone system. The rec-
ord does not reflect that Monroe has an interconnection
agreement or arrangement to connect its mobile radio
telephones with a land-based telephone system. Monroe's
transmission to land-based telephones is accomplished by
a dispatch method. Each customer of Monroe has a

mobile radio in his car. He calls the dispatcher at Monroe's base station, tells him the telephone number he wishes to call, the dispatcher dials it, and then connects the call with the subscriber. In reverse, Monroe's dispatcher can page him by car number, and when the customer answers, he receives the call.

The Bay Springs mobile unit subscribers will utilize dialing in the same manner as its land-based telephones. On the other hand, Monroe subscribers must first contact a base station operator, who then obtains contact for the caller to the land-based telephone destination. Bay Springs subscribers will have exclusion privacy, since their mobile telephone conversations will not be monitored or heard by other subscribers on the channel; but Monroe subscribers do not have such privacy. The Bay Springs system will involve calling only the particular mobile number. This feature is not available to Monroe subscribers, who will hear the dispatcher paging a particular car number. Bay Springs subscribers will have regular directory listings, the same as maintained for its land-based subscribers. That is not available to Monroe. Bay Springs subscribers will be able to use their mobile unit in any area having the same frequencies as the Bell System. On the other hand, the Monroe system, since it uses different assigned frequency ranges, will not have such national compatibility.

Proposed service by Bay Springs is further distinguishable with respect to the geographic area to be served. Its base station will be at the Soso Exchange, which will provide nontoll connecting service to other subscribers of Bay Springs, whose service is connected to other central offices at six other communities in the county. In contrast, Monroe's base stations, located at Laurel and Hattiesburg, have nontoll connecting service through its dispatch arrangement extending only to central exchange subscribers connected to those two cities.

The proposed service by Bay Springs will be confined to the area prescribed by the certificate previously issued to Bay Springs. It will serve only people who live in its certificated area. Monroe has no customers there. Bay Springs has an interconnection agreement with Southern Bell Telephone and Telegraph Company. Its mobile sets will be installed under the dashboard, with the trunk containing a transitorized unit. The radiotelephones will be completely dial, probably with push buttons. Bay Springs will have twenty-four-hour automatic service, with no operator·involved. The proposed service from Bay Springs will cover some but not a substantial part of the area now actually being served by Monroe.

## III.

The existing facility rule began with the regulating of local common carriers operating over fixed routes for transportation of commodities and passengers. It was designed to prevent needless competition and to regulate controlled monopolies for the purpose of preventing economic waste. In re Shelton St. Ry., 69 Conn. 626, 38 A. 362 (1897); 3 Pond, Public Utilities §§ 741, 742 (4th ed. 1932). A restricted version of this doctrine was stated in the Mississippi Motor Carrier Regulatory Act of 1938. Miss. Laws 1938, ch. 142; Miss. Code Ann. §§ 7632-7687 (1956). Section 7642, entitled "Existing Facilities," provides that in the issuance of certificates to motor carriers, the Commission must consider "the present transportation facilities over the proposed route of the applicant," the traffic volume, applicant's financial condition, and the condition of the highways.

The Public Utility Act of 1956 extended the Commission's regulatory powers to electric power, natural gas, and water supply companies, and the transmission of any message by wire or radio, except television and radio

stations. The act refers to "respective certificated areas." Miss. Laws 1956, ch. 372, § 5(d); Miss. Code Ann. § 7716-05(d) (1956). If the Commission finds that a utility is not rendering a reasonably adequate service, it may order the failure to be corrected within a reasonable time. § 5(f). It should prevent "unnecessary and uneconomic duplication of such facilities as between two or more persons." § 5(c).

In short, the existing facility rule, developed under the Motor Carrier Regulatory Act, has been applied to an electric utility under the 1956 act. But it should not be used arbitrarily or inflexibly. The Commission is given the power to determine "that the present or future public convenience and necessity require or will require the operation of such equipment or facility." Miss. Laws 1956, ch. 372, § 5. This is essentially the determination of a matter of policy, namely, which utility in the opinion of the agency will best serve the public convenience, necessity and welfare. The pertinent considerations were well summarized in Utah Light & Traction Company v. Public Service Commission, 101 Utah 99, 118 P. 2d 683, 690 (1941):

"The paramount consideration is the benefit to the public, the promotion and advancement of its growth and welfare. Yet the interest of the existing certificate holder should be protected so far as that can be done without injury to the public, either to its present welfare or hindering its future growth, development, and advancement. Having given due consideration to those matters the commission determines whether the existing carriers or a new one should be permitted to render the proposed service.

"Of course the public interest may well be subserved by preventing waste . . . but the waste must be such as would injure the public or interfere with its interest, growth and development. It must not be a prevention of waste carried to the extreme where it prevents or in-

terferes with progress in equipment or methods or ways of serving the public. And the determination as to whether waste would result, or whether the waste which did result would be so against the public welfare and interest it should be prevented, are questions for the commission to determine.''

The reason for the rule is the prevention of wasteful duplication. City of Covington v. Board of Commissioners, 371 S.W. 2d 20 (Ky. 1963). This carries a concept of substantial exactness of kind and character.

North Bend Stage Line v. Denney, 153 Wash. 439, 279 P. 752, 755 (1929), where a through bus service overlapped and extended over an already served area, held there was no wasteful duplication:

''While the words 'convenience and necessity', as used in connection with the word 'public' in the statutes of this state pertinent to public utilities, do not mean exactly the same thing, it is manifest that the word 'necessity' does not mean *necessary* in the ordinary sense of the word. The convenience of the public must not be circumscribed by according to the word 'necessary' its lexicographical meaning of 'an essential requisite'. The statute is to be so construed as to encourage rather than retard mechanical and other improvements in the appliances devoted to the public service, and in the use thereof in that service, to the end that both the quality and quantity of that which is offered to the public for its pleasure, convenience or necessities may be improved and increased.'' See Bartonville Bus Line v. Eagle Motor Coach Line, 326 Ill. 200, 157 N.E. 175 (1927).

In summary, the existing facility rule has as its rationale the prevention of wasteful duplication in public service enterprises, and the avoidance of uneconomic and unnecessarily duplicating facilities. But it should not interfere with progress in equipment or methods of serving the public, or technological improvements devoted to the public service. The history, development

and reasons of the rule support these conclusions. 13 Am. Jur. 2d *Carriers* §§ 82-84 (1964) ; 60 C.J.S. *Motor Vehicles* §§ 90, 91, pp. 295-303 (1949) ; Annot., 67 A.L.R. 957 (1930).

The Mississippi cases have recognized the reasons for the rule, and the limitations upon it. The ultimate objective is the public convenience and benefit from efficient and adequate utility service. Garrett v. Delta Motor Line, Inc., 224 Miss. 559, 569, 81 So. 2d 245, 82 So. 2d 577 (1955), recognized the public interest in the proposed additional truck service. Again, although there would be some duplication of over-the-road trucks, a railroad was granted a certificate for that purpose which was auxiliary to and in substitution of service previously rendered by applicant on its trains. The rule was not applicable. West Bros. Inc. v. I.C.R.R., 222 Miss. 335, 75 So. 2d 723 (1954) ; Tri-State Transit Co. v. Gulf Transport Co., 201 Miss. 744, 29 So. 2d 825 (1947).

Moreover, the rule was irrelevant in issuance of certificates to restricted common carriers by motor vehicle, for the purpose of transporting either mobile homes over irregular routes, or household furniture from any point in the state to the Gulf Coast. Movers Conference of Miss. v. Long, 243 Miss. 214, 137 So. 2d 925 (1962) ; Morgan Drive-A-Way v. Lee, 243 Miss. 891, 139 So. 2d 863 (1962) ; cf. Campbell's 66 Express v. Delta Motor Lines, 246 Miss. 533, 151 So. 2d 191 (1963).

In the instant case, there was substantial evidence to support the commission's finding that there was no uneconomic duplication, because Bay Springs service would be essentially or substantially different from that rendered by Monroe. The differences are in several respects. There is the kind and type of the service itself. The comparative characteristics are distinguishable in terms of operational frequencies, interconnection, automation, communication privacy, selective range, directory listing, and national compatibility. Assuredly the Commis-

sion could find that the proposal was not economically wasteful or duplicating in these important factors. Moreover, there are differences in the area to be served. Bay Springs will confine its operations to residents of its geographic area, previously certificated. Monroe presently has no customers in the Bay Springs area, although its radio frequencies traverse that territory.

A third difference lies in the type of utility services involved. Bay Springs and Monroe are not bus or truck carriers with fixed routes. Nor are they electric utilities with defined areas for which specific lines can be drawn. The service rendered by Monroe is by radio, without, apparently, an authorized connection with landline telephone service; by Bay Springs, through radio and connected landline telephone. In both cases, transmission and reception by radio cannot be defined firmly by lines of a service area. Radio waves cannot be confined to land-surface boundaries.

██ █ Accordingly, in radiotelephone cases, it is appropriate for the Commission to have some latitude in evaluating all relevant facts, and determining whether to apply the existing facility rule. California, the only state to pass on this issue, has adopted this approach. Appellant cites no cases to support its suggested, rigid interpretation of the rule. The Commission found that public convenience and necessity required the new service by Bay Springs; and the variety of different businesses in this heavily populated area reflected a demand for an automatic, mobile, dial radiotelephone service. In other words, the existing facility did not constitute an adequate substitute for that proposed. By necessary implication it held there would be no uneconomic and unnecessary duplication of facilities, no economic waste. The evidence supported these conclusions.

A decision of the California Public Utilities Commission involves perhaps the closest analogy to the present question. Malis, d/b/a Coast Mobilphone Serv. v. Gen-

eral Tel. Co. of Cal., 40 P.U.R. 3d 315 (Cal. Pub. Util. Comm'n 1961). It held that a landline telephone company's mobile service tariff should be approved, notwithstanding the availability of radiotelephone service from a miscellaneous common carrier, since the public interest would be served best by service rendered by both types of utilities, in order to assure the greatest possible frequency availability. Mobilphone did not offer a properly authorized service which was comparable in type to that proposed by General, except as to dispatching functions. The Commission observed that the FCC had encouraged the development of competitive public radiotelephone systems through the provision of a family of frequencies; that the purpose, among others, was to foster the development of competing systems, techniques and equipments; and the fostering of limited competition had a beneficial effect on the development of the communications art and industry, thus assuring optimum utilization in the state "of the respective portions of the radio-frequency spectrum allocated by the FCC to telephone utilities as a class and to miscellaneous common carriers as a class." Although the California agency further held that General needed no additional certificate to provide mobile telephone service, we do not think Mississippi statutes have this effect.

Commercial Communications, Inc. v. Public Utilities Commission of California discussed at some length radiotelephone service by general telephone company. It held that, while mobile communication "involves an application of the art of radio to telephone communication, it is more akin to telephony than to radio broadcasting." 50 Cal. 2d 512, 327 P. 2d 513, 519 (1958), appeal dismissed, 359 U.S. 119, 79 Sup. Ct. 722, 3 L. Ed. 2d 674, cert. denied and appeal dismissed, 359 U.S. 341, 79 Sup. Ct. 896, 3 L. Ed. 2d 927.

## IV.

██ ██ The Commission was correct in holding it was necessary for Bay Springs to obtain a certificate of public convenience and necessity in order to render mobile dial radiotelephone service. Both Bay Springs and Monroe are public utilities within section 1 D (3) of the act. Miss. Laws 1956, ch. 372; Miss. Code Ann. § 7716-01 D(3). Appellees argue that a duly certificated telephone company, engaged in the telephone business, already has the authority to provide mobile radiotelephone service, because such service is an incidental, integral part and a normal extension of the general telephone business, and it is immaterial that the result is accomplished by radio rather than wire link.

██ ██ We think the Public Utility Act indicates the contrary. It evidences a legislative intent that the Commission shall have continuing jurisdiction over new utility enterprises. Section 5(d), providing for grandfather certificates, confines them to the "construction or operation then being conducted." The reference to "extensions within any area covered by its service area map" contemplates extensions of substantially similar service being rendered at that time, not a related but substantially different type of communications service.

Ball v. American Telephone and Telegraph Company, 227 Miss. 218, 86 So. 2d 42 (1956), involved a landowner's suit to prevent the telephone company from maintaining a coaxial cable buried in the ground, some circuits of which were used for the transmission of television and radio programs. It was held that this was an integral part of the telephone business. The company did not have to secure new easements for every new device which employed the use of electrical impulses through its lines. The present case has only an attenuated relation to *Ball.* Here the certificated landline telephone company proposes to use in part a different communication medium, radio. The Commission has jurisdiction

over this public utility enterprise, both as to certificating it and regulating its rates. Malis, d/b/a Coast Mobilphone Service v. General Telephone Company of California, 40 P.U.R. 3d 315 (1961), reached a different result but was based on a California statute of different terminology. West's Annot. P. U. Code § 1001; cf. Commercial Communications v. Public Util. Comm'n, 327 P. 2d 513, 50 Cal. 2d 512 (1958), appeal dismissed, 359 U.S. 119, 79 S. Ct. 722, 3 L. Ed. 2d 674, cert. denied and appeal dismissed, 359 U.S. 341, 79 S. Ct. 896, 3 L. Ed. 2d 927.

In summary, the Commission properly issued a certificate of convenience and necessity to Bay Springs. The chancery court erred in sustaining the cross appeal of Bay Springs and Southern Bell to that court, and in holding it was not necessary for Bay Springs to obtain an additional certificate to operate a mobile radiotelephone service. To that extent, the decree of the chancery court is modified and amended. In all other respects the decree of the chancery court is affirmed. The endresult of this Court's judgment is to approve *in toto* the order of the Commission.

Affirmed as modified and amended.

*Kyle, P. J., and Gillespie, Brady and Patterson, JJ.,* concur.