372 So.2d 259 (1979)
MISSISSIPPI PUBLIC SERVICE COMMISSION and Ansa-Phone of Pearl, Inc.
v.
AAA ANSERPHONE, INC., Jackson.
No. 51118.
Supreme Court of Mississippi.
May 9, 1979.
*260 Thomas, Price, Alston, Jones & Davis, John H. Price, Jr., A.F. Summer, Atty. Gen., by Bennett E. Smith, Asst. Atty. Gen., Jackson, for appellant.
Perry, Crockett, Morrison & Starling, Fred W. Johnson, Jr., Jackson, for appellee.
Before SMITH, SUGG and COFER, JJ.
COFER, Justice, for the Court:
Ansa-Phone of Pearl, Incorporated (Ansa-Phone) applied to the Mississippi Public Service Commission (Commission) for a certificate of public convenience and necessity to "establish, maintain and operate a domestic public land mobile and portable radio service which will be engaged in the transmission of messages by radio as a public communication service for compensation or hire between a base transmission and receiving station to mobile and portable units and from such mobile units to said base station." Ansa-Phone proposed in its application to "render a new radio telephone common carrier, 150 megacycle, fully automatic radio service from a base station located at the approximate geographic center of Pearl," in an area encompassed by a 35-mile radius from the proposed base station. From a decision favorable to the applicant Ansa-Phone, AAA Anserphone, Incorporated, Jackson (AAA) which resisted the application at the commission hearing, appealed to the Chancery Court of the First Judicial District of Hinds County. (South Central Bell Telephone Company had filed protest to protect its authority already certificated, but did not participated in the hearing. In its order, the Commission retained to South Central Bell Telephone Company rights held under certificates of public convenience and necessity referred to in Chapter 372, Sec. 1 D(3), Laws of Mississippi, of 1956, including the furnishing of mobile and portable radio-telephone service and authorized it "to conduct all the aforesaid operations and make extensions thereto within all the territory embraced within its certificated area in Mississippi, including the area encompassed in the present petition." The said section 1 D(3), Chapter 372, Laws of 1956, reads as follows:
(3) The transmission, conveyance or reception of any message over wire, or by radio, or otherwise, of writing, signs, signals, pictures and sounds of all kinds by or for the public, where such service is offered to the public for compensation; and the furnishing, or the furnishing and maintenance, of equipment or facilities to the public, for compensation, for use as a private communications system or part thereof; provided, that no persons or corporations not otherwise a public utility within the meaning of this act shall be deemed such solely because of engaging in this state in the furnishing, for private use as last aforementioned; and provided further that nothing in this act shall be construed to apply to television stations, radio stations or community television antenna services.)
*261 The chancery court reversed and set aside the Commission's order and Ansa-Phone and the Commission have appealed therefrom to this Court.
Appellants Ansa-Phone and the Commission assigned as errors (1) the chancellor's finding that the operations for which the commission had granted authority will result in a duplication and waste and that it violates the "existing facility rule," (2) the chancellor's holding that AAA was rendering adequate service in the area sought to be served by Ansa-Phone; (3) the chancellor's failure to hold that the Commission's order was supported by substantial evidence and was in accordance with the manifest weight of the evidence; (4) the chancellor's holding that the Commission's findings of fact do not comply with the statute, Mississippi Code Annotated, section 77-3-59, (1972); (5) if correct in the next preceding holding, the chancellor erred in not remanding the case for more detailed findings in support of its order; and (6) the chancellor's reversing and setting aside of the Commission's order.
It probably should be noted, at the outset, that Ansa-Phone's proposed operations are no different in type from those already certificated to AAA, insofar as the area already being served by AAA is concerned. Whether there is a difference in the quality of these services as rendered by AAA and as proposed to be rendered by Ansa-Phone is in conflict.
The most troublesome of these assignments of error is the first set out above  that Ansa-Phone's operations will result in duplication and in waste, and will violate the "existing facility rule."
The "existing facility rule," frequently referred to as the "Tri-State Transit rule," was first enunciated in Mississippi by the decision of this Court in Tri-State Transit Co. of La., Incorporated v. Dixie Greyhound Lines, 197 Miss. 37, 19 So.2d 441 (1944), wherein it was said:
The rule is, and we find no authority to the contrary, that a certificate should not be granted where there is existing adequate service over the route applied for, and, if inadequate, unless the existing carrier has been given an opportunity to furnish such additional service as may be required. (197 Miss. at 48, 19 So.2d at 444).
The opinion in Capital Electric Power Asso. v. Mississippi Power & Light Co., 240 Miss. 139, 125 So.2d 739 (1961), lists a number of decisions upholding the "existing facility rule," as to motor carriers, and then calls attention to the case of Mississippi Power & Light Co. v. Town of Coldwater, 234 Miss. 615, 106 So.2d 375 (1958), to illustrate the Supreme Court's view that the same rule applies to electric utilities. It then, proceeded to apply the rule and refused to grant to Mississippi Power & Light Company a certificate that would infringe upon the rights of Capital Electric Power Association to serve the power needs of an area which Capital was authorized to serve. It held:
An existing utility within the certificated area has the right and duty to provide the service, and must be given that opportunity. If it fails, the commission can award another franchise to another utility. (240 Miss. at 151, 125 So.2d at 743).
In Movers Conference of Mississippi v. Long, 243 Miss. 214, 137 So.2d 925 (1962), the Commission granted to appellee (as authority in addition to what it had) right to transport household furniture from any point within Mississippi to any point in Jackson County. This Court said:
The question is whether the record contained substantial testimony in support of the order of the Mississippi Public Service Commission granting appellee additional rights under his certificate. We believe that there is substantial evidence to justify the ruling of the Commission. Several public officials of Jackson County testified to the effect that Jackson County was one of the fastest growing counties in the State of Mississippi and that there had been a rapid growth there over the past ten or twelve years; there were a number of new industries that had moved to the County and established plants; there were from six to eight listed; within *262 the last four years the qualified electors had increased from 8,000 to 13,000; that the 1940 census was 20,000 and the 1950 census showed a population of 31,000; and there was testimony to the effect that the Mississippi University census of 1958 showed the population of the County to be around 59,000. The testimony was to the effect that the fluctuation of workers in the area created quite a demand for moving. The appellee had been requested on several occasions to transport furniture from outside of Jackson County into the county and the appellee declined, due to the fact that he did not have the authority. (243 Miss. at 217-218, 137 So.2d at 926-927).
Taking note of the "existing facility rule," the fact that it has been consistently followed as to operators over regular routes, and that, in the Long case next above, it was not observed, the Supreme Court, in Morgan Drive-A-Way v. Lee, 243 Miss. 891, 139 So.2d 863 (1962), had before it applications of Lee for certificate to operate as a restricted common carrier by motor vehicle, transporting mobile homes between points in Mississippi over irregular routes and over all highways and roads therein.
Declining to apply the "Tri-State Transit Rule", this Court first found the granting of the certificate was supported by substantial evidence:
The appellants claim there was no substantial evidence supporting the order of the Commission. The Commission heard evidence as to the estimated number of house trailers at various points in Mississippi, and as to the percentage thereof that were required to be moved monthly by vehicles other than the automobile of the owner. It also heard proof as to the increasing use of house trailers, the increased size thereof, and the fact that trailers were being made longer and wider so that many came to that size where the law prohibited the moving of same by ordinary motor vehicles. It heard testimony as to transient workers, particularly men working on oil rigs, and of the fact that when they are required to move they had to do so speedily; that there were three other carriers holding certificates of this nature, one with headquarters at Biloxi, one at Jackson and one at Laurel; and the number and availability of the vehicles owned by these carriers was shown. They also heard testimony that on many occasions people desiring to be moved would be advised by those in the business that they could not move them for two or three days or more; that at some of the stations, the carriers had only one or two vehicles to answer calls and when these were away it was necessary to either wait for their return or call in vehicles from surrounding states. We think there was substantial evidence to support the finding of the Commission. (243 Miss. at 896, 139 So.2d at 864).
It was then said:
In the present case there were only three authorized carriers of this type in the State with a limited amount of equipment and facilities, and this in a business which the Commission was justified in believing was increasing steadily. These certificates were for the operating of irregular routes with no schedule and to any point or place in Mississippi over any road or highway. In fact, we know as a matter of common knowledge that some workers may have their trailers situated in places where there are no public roads. They may be situated out in a field or in a swamp off the highway, though most of them will maintain their house trailers in or around a town or city near where they are employed for the time being. For these reasons, this Court holds that the "Tri-State Rule" is not applicable to this case. (243 Miss. at 898, 139 So.2d at 865).
It is our view that the case of Keith, d/b/a Monroe Radiotelephone Company v. Bay Springs Telephone Company, Inc., 251 Miss. 106, 168 So.2d 728 (1964), cited with approval and with partial quotation in Mississippi Power Co. v. South Miss. Electric Power Association, 254 Miss. 754, 183 So.2d 163 (1966), is decisive of the assignment of error now under consideration.
*263 Differences in the types of service available and sought to be made available by Keith and Bay Springs Telephone Company (Bay Springs) existed in that case, but this Court further examined the "existing facility rule," and said:
However, the existing facility rule does not apply unless the services and facilities to be rendered by the new certificate are duplicating and result in waste. Section 5(c) of Public Utility Act reflects an intent to "prevent unnecessary and uneconomic duplication of such facilities as between two" utilities. See also § 5(f). The rule is a limitation upon the Commission's power to issue certificates, but it is relevant for the purpose principally of avoiding wasteful duplication of the existing utility service. (Emphasis added). (251 Miss. at 114, 168 So.2d 730).
It was true in that case and is true here that, in order to render mobile telephone service radio must be utilized, which, in turn, requires application to the Federal Communications Commission for assignment of radio wave length or lengths and permission to operate the required equipment and "these frequencies do not interfere with or duplicate those available or assigned to" another successful applicant.
The Court continues in the Bay Springs case:
The existing facility rule began with the regulating of local common carriers operating over fixed routes for transportation of commodities and passengers. It was designed to prevent needless competition and to regulate controlled monopolies for the purpose of preventing economic waste. [citing authorities] (251 Miss. at 117, 168 So.2d at 731).
The existing facility rule is intended to prevent wasteful duplication, but,

In summary, the existing facility rule has as its rationale the prevention of wasteful duplication in public service enterprises, and the avoidance of uneconomic and unnecessarily duplicating facilities. But it should not interfere with progress in equipment or methods or serving the public, or technological improvements devoted to the public service. (Emphasis added). (251 Miss. at 119, 168 So.2d at 732-733).
The Court said that our cases have recognized the rule and its limitations and observed that "[t]he ultimate objective is the public convenience and benefit from efficient and adequate utility service." 251 Miss. at 120, 168 So.2d at 733).
Differentiating Bay Springs and Keith from other utility services, the Court said:
A third difference lies in the type of utility services involved. Bay Springs and Monroe are not bus or truck carriers with fixed routes. Nor are they electric utilities with defined areas for which specific lines can be drawn. The service rendered by Monroe is by radio, without, apparently, an authorized connection with landline telephone service; by Bay Springs, through radio and connected landline telephone. In both cases, transmission and reception by radio cannot be defined firmly by lines of a service area. Radio waves cannot be confined to land-surface boundaries. (Emphasis added). (251 Miss. at 121, 168 So.2d at 733).
The Court then said,

Accordingly, in radiotelephone cases, it is appropriate for the Commission to have some latitude in evaluating all relevant facts, and determining whether to apply the existing facility rule. ... The Commission found that public convenience and necessity required the new service by Bay Springs; and the variety of different businesses in this heavily populated area reflected a demand for an automatic, mobile, dial radiotelephone service. In other words, the existing facility did not constitute an adequate substitute for that proposed. By necessary implication it held there would be no uneconomic and unnecessary duplication of facilities, no economic waste. The evidence supported these conclusions. (Emphasis added). (251 Miss. at 121, 168 So.2d 733).
The commission found in the present case that Pearl's metropolitan area has a population *264 of approximately 28,000 residents and the area has a variety of businesses, manufacturing, oil exploration, and services business, and professions, as plumbers, electrical contractors, general contractors, physicians, and others who expressed their desire for the type of two-way radio service sought to be made available by Ansa-Phone.
A material factor in considering the propriety or none of the Commission's granting the certificate to Ansa-Phone is the phenomenal speed of the growth of Pearl, and of Rankin County, in which Pearl is located and which county is intended to be in the area of Ansa-Phone's service. With a population of 43,933 in 1970, Rankin County had grown 28 percent since 1960, and during the same decade 1960-70, Pearl had a growth of 89.4 percent, and both the municipality and the county have continued their record of growth in these upward of eight years since the 1970 census.
The authority sought by Ansa-Phone does not require heavy equipment and machinery moving along the highways, or termini and land exchange points for the commodity-voice or tone messages which it conveys, nor does it require succession or successions of telephone poles and wires, as do land-line grounded public utilities. It does require approval and assignment of channel by the Federal Communications Commission which prohibits interference with a competitor's wave length. The record establishes that Ansa-Phone would serve and to a degree relieve the congestion of telephone exchanges 939 and 932 in the Pearl area.
It is likewise pointed out that with distance and range of sight, the service from an antenna to the mobile or portable telephone or receiver and vice-versa becomes greatly impaired and the reception becomes attenuated. Contributing also to the reception impairment are the numbers and location of tall buildings in downtown Jackson, among which AAA's antennae are largely located. Ansa-Phone logically argues that this type of dissipation of sound quality will not be present in an area served by its Pearl location.
The Federal Communications Commission has, in its actions, indicated an encouragement of competition, in a limited degree in assigning various frequencies in cases such as this at bar. Malis v. General Telephone Co. of California, 40 PUR 3d 315 (Cal. Public Utilities Commission 1961).
In view of the record, the Commission had, and properly used, flexibility of the "existing facility rule." In so finding, we also conclude that "[b]y necessary implication it held there would be no uneconomic and unnecessary duplication of facilities, no economic waste" (Bay Springs, supra), and we find that the evidence supports these conclusions as said also in the Bay Springs citation next above.
Having resolved in favor of Ansa-Phone and the Commission the first crucial assignment of error, we further only notice the chancellor's holding that the commission's failure to make detailed findings of fact is reversible error.
Mississippi Code Annotated Section 77-3-59 (1972), requires that the Commission, after hearing has been concluded, shall "make and file its findings and order, and its opinion, if any."
In Fortune Furniture Mfg. Co. v. Sullivan, 279 So.2d 644 (Miss. 1973), a workmen's compensation case, this Court said:
This is another one of those cases in which this Court is handicapped in its effort to perform the function of an appellate court, because of the lack of facts stated in the order of the administrative agency on which its finding is predicated. (279 So.2d at 646).
The decision cited Rivers Construction Co. v. Dubose, 241 Miss. 527, 130 So.2d 865 (1961), holding that failure to make a finding of fact is not fatal to an informal order of the Commission but that it is better form for such a fact finding administrative agency to make a finding of fact on which to base its award or failure to award a claim.
In Morgan Drive-A-Way v. Lee, 243 Miss. 891, 899, 139 So.2d 863, 865-866 (1962), supra, there was argument that the Public Service Commission failed to include in its order sufficient ultimate findings of fact, and this Court pointed to Illinois Central Railroad Co. v. Jackson Ready-Mix Concrete, *265 243 Miss. 72, 137 So.2d 542 (1962), which announced that state agencies are not required to make a detailed finding of fact, but that an ultimate finding is sufficient.
The failure of the Commission's order to contain a detailed finding of fact in Mississippi Power Co. v. Miss. Public Service Commission, 291 So.2d 541, 554-555 (Miss. 1974), was the subject of comment in this Court where it was said that detailed findings should be made as an aid to the Court on appeal and in Mississippi State Tax Commission v. Piggly Wiggly Alabama Distributing Co., Inc., 369 So.2d 501 (1979), we took note of the Tax Commission's failure to make detailed findings of fact. We do not know and have not had cited to us any holding of our Court that failure to make findings of fact in cases such as this is basis for reversal.
We find no other assignment of error merits discussion.
The chancery court's decree is reversed and the order of the Commission is reinstated.
REVERSED AND ORDER OF THE COMMISSION REINSTATED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.